JAMES BLOOMFIELD *et ux. vs.* CHESTER BROWN *et al.*

MARCH 16, 1942.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. By this bill in equity the complainants, James Bloomfield and his wife, Margaret Bloomfield, seek to enjoin the respondent, Chester Brown, a judgment creditor of the husband, from selling on execution the husband's right, title and interest in certain real estate in the town of Middletown. The bill alleges that the real estate in question is held by the complainants as tenants by the entirety. The respondents demurred to this bill and their demurrer was sustained by the superior court. A final decree was thereafter entered dismissing the bill, whereupon the complainants duly appealed to this court.

The following questions are raised in this cause: First, was an estate by the entirety ever recognized and allowed by the laws of this state? Second, if this question is answered in the affirmative, is the creation of such an estate prohibited by public laws 1798, pp. 272, 273, sec. 8, now general laws 1938, chapter 431, § 1? Third, if the answer to the preceding question is in the negative, is an estate by entirety prohibited or affected in any way by G. L. 1923, chap. 290, secs. 1, 13, now G. L. 1938, chap. 417, § § 1, 13, commonly known as the married women's act?

The first question requires us to recall that an estate by the entirety was well known to the common law of England long before the settlement of Providence by Roger Williams in 1636, and of Portsmouth on the Island of Aquid-

neck, later called Rhode Island, by Anne Hutchinson and Dr. John Clarke in 1638. It is clear to us that the colonists, upon their emigration from the mother country, brought with them to this state the common law of England, so far as it was applicable to their condition and circumstances here.

The charter of King Charles II of England, dated July 8, 1663, which continued to be treated substantially as the organic law of this state until our present constitution became operative on the first Tuesday of May, 1843, created "a body corporate and politic, in fact and in name, by the name of the Governor and Company of the English Colony of Rhode Island and Providence Plantations, in New England, in America." Among the powers granted to that body politic was the power "to make, ordain, constitute or repeal, such laws, statutes, orders and ordinances, forms and ceremonies of government and magistracy, as to them shall seem meet, for the good and welfare of said Company . . . so as such laws, ordinances and constitutions, so made, be not contrary to and repugnant unto, but as near as may be, agreeable to the laws of this our realm of England, considering the nature and constitution of the place and people there . . . ."

In public laws of Rhode Island 1767, at page 55, we find an act entitled: "An Act, regulating sundry Proceedings in the several Courts in this Colony", which provides: "That all the Courts in this Colony shall be held to, and governed by, the Statutes, Laws, and Ordinances of this Colony, and such Statutes of Parliament as are hereinafter mentioned". Immediately following the mention of certain specific statutes, not pertinent in this cause, the act then says: "AND *be it further Enacted by the Authority aforesaid,* That in all Actions, Causes, Matters and Things, whatsoever, where there is no particular Law of this Colony, or Act of Parliament introduced, for the Decision and Determination of the same, then and in such Cases, the Laws of

England shall be in force for the Decision and Determination of the same." See G. L. 1938, chap. 306, § 1.

The early common law of England, as modified by applicable statutory changes by parliament or the colonial general assembly, was in force in this state prior to the revolution. Although the colonial legislature provided a system for the recording of deeds as early as 1714—P. L. of R. I., pp. 50, 51—we have found no act, and none has been called to our attention, which deals with the subject of land tenure or of the estates in which land might be held in this state before the revolution.

This historical background in matters of law convinces us that the common law of England, with reference to the nature of the estates in which land might be held in this state and the attributes of any particular estate that might be created under that law, was adopted at the time of the revolution and became a part of the common law of this state. We therefore conclude, in answer to the first question submitted to us, that an estate by the entirety as known to the English common law was recognized and allowed by the common law of Rhode Island.

The second question before us is whether an estate by the entirety, although permitted by the common law of this state, is prohibited by P. L. 1798, pp. 272, 273, sec. 8, now G. L. 1938, chap. 431, § 1. The respondents contend that such an estate, if it ever existed in this state, was prohibited by our legislature through this statute, which originally read as follows:

"Sec. 8. *And be it further enacted,* That all gifts, grants, feoffments, devises and other conveyances of any lands, tenements and hereditaments, which have been or shall be made, to two or more persons, *whether for years, for life, in tail or in fee, shall be taken, deemed and adjudged, to be estates in common, and not in joint tenancy, unless it is or shall be therein expressly said, that the grantees, feoffees,

or devisees, shall have or hold the same lands, tenements or hereditaments, as joint tenants, or in joint tenancy, or to them and the survivor or survivors of them, or unless other words be therein used, clearly and manifestly shewing it to be the intention of the parties to such gifts, grants, feoffments, devises or other conveyances, that such lands, tenements and hereditaments, should vest and be holden as joint estates, and not as estates in common." (asterisk ours)

In the revision of 1822 the following words appear after the asterisk in the statute just quoted: " . . . whether they be husband and wife or otherwise." The original statute, with but slight changes in form only, has remained in force up to the present time.

The respondents argue that the obvious meaning of this statute is that all conveyances or devises coming within its scope "created either (1) tenancies in common, or (2) joint tenancies, and there is no room for a third class", meaning tenancies by the entirety. In substance, they contend that, by necessary implication, the original statute and its subsequent reenactments prohibited the creation of such a tenancy.

The rules of statutory construction are well known. Only summary mention need be made of the following rules to be applied in construing the statutes involved in this cause. It must be presumed that the means employed by the legislature to express its will are adequate to the purpose and do express that will correctly. If the language of a statute is plain, free from ambiguity and expresses a sensible meaning, that meaning is conclusively presumed to be the meaning which the legislature intended to convey. Such a statute must be literally construed. *Blais* v. *Franklin*, 31 R. I. 95; *Kenyon* v. *United Electric Rys. Co.*, 51 R. I. 90. If the language of a part of a statute is not clear, the intent of the legislature is to be gathered from the statute taken as a whole so that all pertinent provisions may be given effect, if reasonably possible. *Bijou*

*Amusement Co.* v. *Toupin,* 63 R. I. 503. In neither instance is the court free to substitute for the will of the legislature its own ideas as to the policy of the law.

It will also be presumed that, in enacting a statute, the legislature did not intend to make any alteration in the common law, unless the language used naturally and necessarily leads to that conclusion or, as this court expressed itself in *State* v. *Shapiro,* 29 R. I. 133, at page 139, "unless the intent to alter it (the common law) is clearly expressed." This rule applies in construing both criminal and civil statutes. *Langlois* v. *Dunn Worsted Mills,* 25 R. I. 645, 649.

The application of these well-established rules of construction to the aforementioned provision of P. L. 1798, as amended in 1822, and of G. L. 1938, clearly shows that it was not the intention of the legislature to prohibit an estate by the entirety in this state, as the respondents contend. The statute, in plain and unambiguous language, prescribes a rule of construction to be followed in interpreting a conveyance of land to two or more persons, whether they be husband and wife or otherwise. Unless it is declared in the instrument itself that the "tenancy is to be joint, or that the same is to such persons and the survivors or survivor of them . . . or unless the intention manifestly appears that such persons shall take as joint tenants and not as tenants in common", the conveyance "shall be deemed to create a tenancy in common and not a joint tenancy."

The statute in effect declares that it is the policy of the state to look with but little favor upon joint tenancies under modern conditions. The rule of construction prescribed by the statute is that, in construing a conveyance of land, an intention to create a tenancy in common will, if possible, be imported rather than an intention to create a joint tenancy; or, stating the same rule in a different way, that an estate in two or more persons, including one in a husband and wife, will, if possible, be presumed to be a tenancy in common, unless a contrary intention manifestly appears.

The statute in question neither creates nor abolishes any

particular kind or character of estates that can be held by two or more persons in this state. To construe the statute as prohibiting the creation of an estate by the entirety would be going outside the statute in order to prohibit an established estate at common law, which the legislature has not seen fit to abolish.

The respondents further argue that an estate by the entirety is such an anomalous estate under present day conditions that "it has long since ceased to exist, at least in reality" in this state. The complainants on the other hand positively assert, without denial from the respondents, that conveyances creating tenancies by entirety have been common in the county of Newport, where the land involved in this cause is located. Be this as it may, it is not our province to express our opinion upon matters of policy.

The respondents refer us to the case of *Van Ausdall* v. *Van Ausdall,* 48 R. I. 106, as impliedly supporting their contention and quote the following statement, which is to be found in the middle of page 111 of that opinion: "It (the statute) attacks the root of tenancies by entirety." In the *Van Ausdall* case the court was confronted with the construction of a deed conveying certain real estate to husband and wife "as joint tenants and not as tenants in common." The question at issue was whether title was held by the parties as tenants by entirety or merely as joint tenants. The court, after discussing the incidents of a joint tenancy and of a tenancy by entirety in the light of the same statute now before us, held that the husband and wife were joint tenants in the ordinary legal meaning of such term and not tenants by entirety.

The *Van Ausdall* case lends support to our conclusion in this cause on the point now under consideration. It admits, as we do, that, generally speaking, tenancies by entirety have been uncommon in Rhode Island, but it does not say, either expressly or by reasonable inference, that such tenancies were not a part of the common law of this state, or that if they were, the statute under consideration abol-

ished them. As a matter of fact, on page 109 of that opinion, the court says: "In our opinion the possible existence of such tenure may be accepted without necessarily indulging presumptions in its favor. We think such possibility came to us as a part of our common law."

The single sentence hereinbefore quoted and relied on by the respondents, when isolated from its context, does not convey the court's meaning. In discussing the same statute now under consideration, the court says: "It is true that the statute is silent as to presumptions between joint tenancies and those by entirety but it does betray a clear recognition that a deed to husband and wife does not necessarily create a tenancy by entirety because of their single personality in law. It attacks the root of tenancies by entirety." We interpret this expression of the court to mean that unless a tenancy by entirety is manifest in a deed to husband and wife, a deed to them as joint tenants will be construed as creating a joint tenancy by moieties and not a tenancy by entirety, as at common law.

In *Quinn* v. *Drummond,* 47 R. I. 215, at page 220, this court, speaking of tenancies by entirety, says: "An estate by entirety is a peculiar and anomalous estate *sui generis* in its nature (30 C. J. 564,) and it is evident from our statute that such an estate is not to be created unless plainly so intended." Our opinion therefore is that the statute under consideration did not prohibit the creation of an estate by entirety.

Under the third question hereinbefore stated, the respondents contend that, assuming that the estate by entirety did exist here once and that it survived the statute just considered, such an estate did not survive the married women's property act. They also contend that at least the husband's interest in such estate is subject to levy and sale on execution by his judgment creditor. As the conveyance involved in this cause was made in 1924, the statute referred to is G. L. 1923, chap. 290, section 1, now G. L. 1938, chap. 417, § 1.

In so far as pertinent, this section is as follows: "Section 1. The real estate, chattels real and personal estate, which are the property of any woman before marriage, or which may become the property of any woman after marriage . . . and the proceeds of all such property, shall be and remain her sole and separate property free from control of her husband."

The conflict in the cases from other jurisdictions on the points raised by the question now before us is so great and the grounds for the decisions in those cases are so varied that it seems possible to find authority in support of different conclusions. See *Raptes* v. *Pappas,* 259 Mass. 37; *Beihl* v. *Martin,* 236 Pa. 519; *Servis* v. *Dorn,* 76 N. J. Eq. 241; 9 L. R. A. (n.s.) 1026, note; 42 L. R. A. (n.s.) 555, note. In view of the varying language and of the differences of construction of the married women's acts of other states, we believe that in this situation our purposes will be best served by confining ourselves to the effect, if any, of our own act and the decided cases thereunder.

In the case of *Van Ausdall* v. *Van Ausdall, supra,* the effect of our married women's act on an estate by entirety was considered by this court. At page 112 of the opinion in that case, the court says: "Some courts have held that estates by entirety ceased to exist or were abolished by the married women's acts. 30 C. J. 558, § 87, n. 62. We agree with these courts that such tenure is not in keeping with the attitude of modern times toward the property rights of husband and wife but we do not deem it necessary to hold that the possibility of creating such an estate has ceased." We find no reason to disagree with this conclusion. The possibility of creating an estate by entirety has not been removed by the married women's act, provided that the intention to create such an estate clearly appears in the conveyance.

The purpose of the act, as consistently interpreted by this court since its original enactment in 1844, may be found, among other cases, in *Martin & Goff* v. *Pepall,* 6 R. I.

92; *Greenwich National Bank* v. *Hall,* 11 R. I. 124; *In Re The Voting Laws,* 12 R. I. 586; *Hayden* v. *Stone,* 13 R. I. 106; *Cooney* v. *Lincoln,* 20 R. I. 183; *Gorman* v. *McHale,* 24 R. I. 257; *Cranston* v. *Cranston,* 24 R. I. 297; *Lawton* v. *Lawton,* 48 R. I. 134; *Kelley* v. *Kelley,* 51 R. I. 173.

It is clear from what is said in these opinions that the object of the act, as amended from time to time, was to give "the wife the exclusive and untrammelled management of her property", the word "property" being used "in an extremely broad sense". *Cooney* v. *Lincoln, supra,* 185, 186. In *Kelley* v. *Kelley, supra,* a wife, relying upon the provisions of G. L. 1923, chap. 290, section 1, brought an action of trespass and ejectment against her husband. This court sustained a direction of verdict for the defendant. At pages 175 and 176 of that opinion the court says: "The rule of the common law that the legal identity of the wife was merged in that of her husband has long since been changed in this State. The wife, by statute, in many respects is now held to be a distinct legal person; but she is not and never has been held to be in the same legal position as an unmarried woman." And at page 177 the court further says: "Marriage contemplates the living together of the husband and the wife. . . . Neither husband nor wife without lawful cause so long as the marital relation exists can exclude the other from the home they have established by mutual and voluntary choice."

It may be said generally that the effect of the married women's act is to raise up the wife, in the eyes of the law, to the same position as that of the husband, thus entitling her to take and hold real estate in her own right as a natural person in any manner permitted by existing law, free from the control formerly exercised by the husband at common law. The act is emancipatory and protective in character. Its aim is to secure to a wife the free enjoyment of her own real estate, and not to limit her as to the kind of estates in which she may take and hold such property.

We are confirmed in this view of the married women's

act from a consideration of section 4 of that act in the light of G. L. 1923, chap. 297, sec. 20, (now G. L. 1938, chap. 435, § 17) entitled "Of the Conveyance of Estates". In so far as pertinent, these sections are as follows: "Sec. 4. A married woman . . . may take directly from, her husband or any other person, any estate or interest in any real or personal property, in the same manner and with the same effect as if she were single and unmarried." "Sec. 20. In deeds hereafter made, lands . . . may be conveyed by a person to himself jointly with *another person* . . . and may in like manner, be conveyed by a husband to his wife and by a wife to her husband, alone or jointly with *another person*." (italics ours)

These two sections were considered by this court in *Lawton* v. *Lawton, supra*. There a husband conveyed certain real estate to himself and wife, to hold as joint tenants and not as tenants in common. Upon the death of the wife, her only heir at law and next of kin disputed the husband's title to and right of possession of said estate as the survivor of himself and wife, and claimed the whole estate as sole heir at law of the deceased wife. Such claim was based upon the contention that, because of the incapacity of the husband to create a joint tenancy in the estate by deed directly from himself to himself and wife, the legal effect of the conveyance was to vest the whole estate in the wife. The court overruled this contention and held the conveyance valid as made. At page 137 of that opinion it says: "The wife now has full property rights independent of her husband. As far as relates to her power to convey and to take property she comes within the designation of 'another person' from her husband."

As we have already indicated, the evident intent of our married women's act is to place a married woman upon practically the same basis or plane, with regard to legal rights in the care, management and enjoyment of her own real property, as if she were sole and unmarried. In our opinion it was not the intent of the legislature to impose

a limitation upon the right of a married woman to take title to land, at her election, in any kind of tenancy allowed by law. We find nothing in the act, either in express language or by necessary implication, that prohibits a married woman from taking title to land as an estate by entirety, if she chooses to do so. If she can take title to land as a joint tenant with her husband, we see no sound reason, under our statutes, why she should be denied the right to take title to land as an estate by entirety, which, though anomalous, is nevertheless a type of joint estate well established at common law. *Van Ausdall* v. *Van Ausdall, supra,* 112. For the purposes of this cause, the only effect that our married women's act has upon such a tenancy is to deny the husband, during marriage, the right to the exclusive possession and control of real property so held by himself and wife, which right he formerly had at common law.

It is clear from the allegations of the bill of complaint in this cause and the prayer for special relief therein that the vital question raised by the bill and the demurrer thereto is whether the respondent had the right to have a sale made under a certain writ of execution. From the bill and demurrer the following facts appear. In that writ the sheriff was directed to levy upon and to sell certain property. This was described in that writ and also in the prior writ of attachment as "all the right, title and interest, which the said defendant (James Bloomfield) had on the 16th day of May A. D. 1939", the date of the attachment, in and to the land, with buildings and improvements thereon, in which the complainants, as husband and wife, then had an estate by the entirety.

After careful consideration we have come to the conclusion that at any rate the estate or interest which he, the sole defendant in the law action, then had for the period of time during which they would both be living and married could not be separated from her estate without her consent and was, because of the nature of an estate by the entirety,

as modified by the married women's act, not subject to levy and sale on an execution based on a judgment against him alone; and that therefore the respondent had no right to have a levy and sale made under the writ of execution described in the bill of complaint in this cause. Therefore we are of the opinion that the demurrer should have been overruled.

Giving our existing statutes reasonable effect in keeping with our decided cases thereunder, we are unable, as a matter of law, to arrive at any other conclusion. In the final analysis, whether an estate by entirety should be abolished or modified in the future, in view of the change in conditions from those existing at common law, is a question of policy to be decided by the legislature rather than by the court.

The complainants' appeal is sustained, the decree appealed from is reversed, and the cause is remanded to the superior court for further proceedings.

*Robert M. Franklin,* for complainants.

*Hinckley, Allen, Tillinghast & Wheeler, Harold A. Andrews,* for respondents.