**In re Steven SNYDER, Debtor.**

**Steven Snyder, Appellant,**

v.

**Rockland Trust Company, Appellee.**

**No. MB 99–035.**

United States Bankruptcy Appellate Panel
of the First Circuit.

June 2, 2000.

Peter L. Zimmerman and Richard L. Blumenthal of Silverman & Kudisch, P.C., on brief for appellant.

Jeffrey D. Ganz of Riemer & Braunstein LLP, on brief for appellee.

Before DE JESÚS, VAUGHN and CARLO, Bankruptcy Judges.

VAUGHN, Bankruptcy Judge.

This is an appeal by the Debtor/Appellant of the bankruptcy court's decision, which only partially avoided the Appellee's judicial lien. It primarily concerns the proper valuation of the Debtor's interest in real property, which he holds with his nondebtor spouse as tenants by the entirety. The Appellant has also raised the issue of the Court's treatment of the fact that the nondebtor spouse has filed a homestead election under Massachusetts law.

■ On appeal, conclusions of law are reviewed *de novo Palmacci v. Umpierrez,* 121 F.3d 781, 785 (1st Cir.1997); *In re DN Associates,* 3 F.3d 512, 515 (1st Cir.1993); *In re Leicht,* 222 B.R. 670, 671 (1st Cir. BAP 1998). The Panel may affirm, modify or reverse or remand with instructions for further proceedings. FED. R. BANKR. P. 8013.

The facts are not in dispute. The Debtor and his spouse owned a residence as tenants by the entirety formed subsequent

to February 11, 1980.[1] Appellant and Appellee have stipulated to the value of the residence as $239,000. The Appellant filed for relief under Chapter 7 of the Bankruptcy Code on March 2, 1998. As part of that filing, the Debtor elected the federal exemptions pursuant to § 522(b)(1) of the Bankruptcy Code. At the date of the filing, the property was subject to the following: a lien in favor of the collector of taxes for Randolph, Massachusetts, in the amount of $764.99; a first mortgage to Randolph Savings Bank in the amount of $160,413.28; a second mortgage to Randolph Savings Bank in the amount of $5,385.55; and an attachment filed by the Appellee in December 1997 against the Appellant's interest only in the amount of $65,000. The Appellant's spouse filed a declaration of homestead on September 16, 1997. It also appears uncontested that the Appellant is a male and is three years older than the nondebtor spouse.

Based on these facts, the Appellant brought a motion pursuant to section 522(f) to avoid the Appellee's judicial lien. The bankruptcy court, in a thoughtful opinion, made the following findings:

> The circumstances call for a provisional order. Accordingly, I will today adopt the more conservative of the remedies being urged upon me: the Court will avoid Rockland's lien only in part, based on the express assumption that, upon termination of the tenancy by the entirety, the Debtor's interest will extend to the whole of the property. However, I will also expressly provide that, if (when the tenancy is terminated (either voluntarily or involuntarily) or when the nondebtor spouse ceases to occupy the property as her primary residence, such that Rockland becomes free to enforce its lien) the assumption proves to be wrong, the order shall be subject to reconsideration for changed circumstances, specifically, that the Debtor's interest does not at that time extend to the whole of the property (or the proceeds thereof), warranting avoidance of Rockland's lien to a greater extent. This provisional order may turn out to not to [sic] require reconsideration (if upon termination of the tenancy, the Debtor's rights do extend to the whole of the property) or may turn out to be irrelevant (if the tenancy is terminated in a manner that, even if Rockland's lien is wholly avoided, leaves no equity for the Debtor). But, if circumstances ultimately do require that the order be reconsidered, both Rockland's lien rights and the Debtor's exemption will be protected until reconsideration.

*In re Snyder,* 231 B.R. 437, 445 (Bankr. D.Mass.1999) (footnotes omitted). It is from this order that the Appellant appeals.

 Judge Kenner, in her opinion, ably sets out the Commonwealth of Massachusetts' law having to do with tenancies by the entirety. Rather than attempt to restate that status, the panel adopts that portion of the opinion verbatim:

> The concept of a tenancy by the entirety derives from the common law. *Coraccio v. Lowell Five Cents Savings Bank,* 415 B.R. 145, 148 [415 Mass. 145, 612 N.E.2d 650] (1993). Massachusetts courts still look to the common law for most of its attributes, except that, with respect to tenancies by the entirety created after February 11, 1980, the common law was modified in certain respects by statute, G.L. c. 209, § 1, "in an attempt to equalize the rights of men and women holding property as tenants by the entirety." *Id.* at 151 [612 N.E.2d 650]. The tenancy by the entirety at issue in this case was created after the effective date of the statute and so is subject to the statutory modification. Accordingly, the law set forth below pertains to tenancies by the entirety created after the statutory modification, not necessarily to those created before the modification.

---

1. The common law was modified in certain respects by statute. G.L. c. 209, § 1.

A tenancy by the entirety is a form of concurrent ownership that can exist only between co-owners who are husband and wife. *Id.* at 148 [612 N.E.2d 650]. In such a tenancy, husband and wife "are seised of the estate so granted *as one person,* and not as ordinary joint tenants or tenants in common." *Id.* at 148 [612 N.E.2d 650], quoting from *Raptes v. Pappas,* 259 Mass. 37, 38, 155 N.E. 787 (1927) (emphasis added). Therefore, husband and wife hold the property not as "two tenants by the entirety," but as one person, in one tenancy. The point is more than semantic; it underscores that a tenancy by the entirety is a "unitary title": a title in which the interests of both husband and wife extend to the whole of the property, not merely to some fractional interest that the other does not also hold. *Coraccio,* 415 Mass. at 151, 612 N.E.2d 650.

Each spouse's interest in and rights as to the whole are well-protected from compromise by the other. For as long as the marriage continues, the estate cannot be severed, terminated, or partitioned by either spouse without the assent of the other. *Id.* at 149 [612 N.E.2d 650]. Either spouse may convey or encumber his or her own interest, *id.* at 152 [612 N.E.2d 650], but the interest so conveyed would be subject to the continuing rights of the other in the property, such that the interest conveyed would, among other things, be wholly defeasible upon the death of the conveying spouse and survivorship of the other. *Id.* The property held in a tenancy by the entirety can be attached by the creditors of one spouse, *Peebles v. Minnis,* 402 Mass. 282, 521 N.E.2d 1372 (1988), but, in a tenancy created after the effective date of G.L. c. 209, § 1, the debtor spouse's interest is not subject to seizure or execution by his or her creditors while the property remains the principal residence of the nondebtor spouse. G.L. c. 209, § 1.

A tenancy by the entirety "continues during the existence of the marital relationship and cannot be changed except by death, divorce, a deed of both parties or a deed of one spouse to the other." *Campagna v. Campagna,* 337 Mass. 599, 605, 150 N.E.2d 699 (1958); *In re Conroy,* 244 [224] B.R. 282, 285 (Bankr. D.Mass.1998) (Hillman, J.). Upon the occurrence of one of these events, however, the tenancy by the entirety is terminated, and the spouses' unitary title with it. What rights then replace that title? The answer depends on how the tenancy is terminated.

If the tenancy is ended by the death of one spouse, that spouse's interest is wholly terminated and does not become part of his or her estate. *Petition of Smith,* 361 Mass. 733, 737, 282 N.E.2d 412 (1972) (property held by tenancy by the entirety passes to the survivor by operation of law and does not constitute a part of the decedent's estate). By right of survivorship, the survivor of the marriage "becomes seised as sole owner of the whole estate, regardless of anything the other may have done." *Coraccio,* 415 Mass. at 149, 612 N.E.2d 650, quoting from *Lidker [Licker] v. Gluskin,* 265 Mass. 403, 404, 164 N.E. 613 (1929). No conveyance by either spouse alone can defeat the other's right of survivorship. *Coraccio,* 415 Mass. at 151, 612 N.E.2d 650. By virtue of the right of survivorship, the interest of the first spouse to die is no more than a life estate. That spouse's interest terminates upon his or her death, and, with it, any interest acquired (by assignment or encumbrance, whether voluntary or not) from that spouse alone. *Id.* at 152, 612 N.E.2d 650 (interest that mortgagee of husband would acquire upon foreclosure would be wholly defeasible should the wife survive him).

The tenancy can also be terminated by divorce or by sale of the property. Upon divorce, the tenancy by the entirety becomes a tenancy in common, *Bernatavicius v. Bernatavicius,* 259 Mass. 486, 490, 156 N.E. 685 (1927), and, in the

divorce proceeding, the property is equitably apportioned between husband and wife. G.L. c. 208, § 34. The tenancy might also be terminated by sale of the property by both spouses: either voluntarily, upon a deed of both parties; or involuntarily, by foreclosure on the mortgage given by both spouses to the mortgagee. Regardless of how the property is sold, any proceeds remaining after satisfaction of liens on both parties' interests would, because the tenancy has been terminated, not be held in a tenancy by the entirety, a unitary title. At that point, the parties' interests could be divided and apportioned (though they may elect to hold the proceeds jointly); and each spouse's interest would at last be subject to seizure or execution by creditors holding liens attaching to that interest alone.

In two circumstances, property held in a tenancy by the entirety is subject to seizure and execution even before the tenancy is terminated. First, if and when the nondebtor spouse ceases to occupy the property as her or his principal residence, the property is subject to seizure and execution in satisfaction of a lien on the interest of the debtor spouse. G.L. c. 209, § 1. Second, regardless of whether either spouse continues to occupy the property as the principal residence, the property can be sold in satisfaction of a judicial lien securing an obligation of both parties. In the latter case, it would seem that, because the obligation being satisfied is one of both spouses, the creditor can reach the interests of both spouses in the property. In the former case, the statute permits the creditor to reach only the interest of the debtor spouse. G.L. c. 209, § 1 (*"The interest of a debtor spouse* in property held as tenants by the entirety shall not be subject to seizure of execution by a creditor of such debtor spouse so long as the property is the principal residence of the nondebtor spouse." (emphasis added)).

This survey of Massachusetts law shows that the extent of one spouse's interest in property held in a tenancy by the entirety is not fixed but contingent on (among other things) future events that determine how the tenancy is terminated and when it is liquidated. Pursuant to these events, a debtor spouse's interest will eventually come to one of three possible ends: (1) the debtor spouse will survive the nondebtor spouse and thereupon becomes seised of the whole estate, subject to seizure and execution by his creditors; (2) the debtor spouse will predecease the nondebtor spouse, resulting in termination of the decedent's interest and of liens attaching exclusively thereto; or (3) the tenancy will be terminated (by voluntary conveyance, foreclosure on a jointly given mortgage, or divorce) before the death of either spouse, resulting in termination of the unitary title, division or apportionment of the net proceeds among the spouses (or at least the possibility thereof), and vulnerability of the debtor spouse's interest in the proceeds to seizure or execution by creditors.

*In re Snyder,* 231 B.R. at 441–443 (footnote omitted).

### Value of Debt—Appellant's Interest in the Property

The Appellant argues that the bankruptcy court erred by not determining a present value of the Debtor's interest in the property as of the petition date. Since the Appellant is a male and older than the spouse, the argument goes that he must have less than a fifty percent interest in the property since his life expectancy would surely be less than that of the spouse if, in fact, an actuarial determination was made. Applying fifty percent, or less, of the value of the property in the absence of any liens to the 522(f) formula results in the total avoidance of the lien. The Appellee, on the other hand, argues that the decision of the bankruptcy court should be affirmed since it refers to Mas-

sachusetts courts, the final determination based on future events.

■ In 1994, Congress amended section 522(f) to give a clear meaning to the term "impair an exemption" by creating a mathematical formula to make that determination.

> For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—
>> (i) the lien,
>> (ii) all other liens on the property; and
>> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C. § 522(f)(2)(A). The official comments state in part that "this amendment would provide a simple arithmetic test to determine whether a lien impairs an exemption ...." 140 CONG. REC. 10,769 (1994). A proceeding under 522(f) is excepted from Part VII of the Federal Rules of Bankruptcy Procedure, which otherwise pertain to a proceeding to determine the validity, extent or priority of a lien. FED. R. BANKR. P. 7001(2). Rule 4003(d) expressly provides that a proceeding under section 522(f) shall be by motion. The Panel finds that a hearing on a motion to avoid a lien pursuant to section 522(f), much like a hearing on a motion for relief from the automatic stay, should be a summary proceeding susceptible to a quick and binding resolution. *See Grella v. Salem Five Cent Sav. Bank,* 42 F.3d 26 (1st Cir.1994).

To adopt a procedure for actuarially analyzing the Debtor's interest in the tenancy by the entirety does not fit into this mold, and the Panel rejects it. Indeed, such a procedure would require in each instance a determination of the Debtor's interest based on age, sex, health and all other factors that go into making that type of actuarial determination of value.

■ The second possibility is to treat the tenancy by the entirety as if it were a tenancy in common and assume that the Debtor has a fifty percent interest in the property. However, this seems to fly in the face of the leading Massachusetts case, *Coraccio v. Lowell Five Cents Sav. Bank,* 415 Mass. 145, 612 N.E.2d 650 (1993) in which the Massachusetts Supreme Judicial Court stated "it does not follow that each has an equal one-half interest in the property. On the contrary, a tenancy by the entirety remains a unitary title, and the statute simply guarantees each spouse an equal right to the whole." *Id.* at 151, 612 N.E.2d 650. Thus, the Panel agrees with the bankruptcy court that the Debtor's interest in the tenancy by the entirety property for purposes of the section 522(f) formula should be valued at 100 percent. However, the Panel believes that the valuation should then be fixed and not subject to a possible subsequent hearing when an event occurs which would terminate the tenancy by the entirety. One of the principal tenets of bankruptcy is finality in order to insure the honest debtor a fresh start. *See In re Serapiglia,* 123 B.R. 481, 487 (Bankr. E.D.N.Y.1990); *In re Braddon,* 57 B.R. 677, 679; *Morelock v. All Phase Electric Supply Co. (In re Morelock),* 47 B.R. 533, 535; *See also* H.R. REP. NO. 595, 95th Cong., 1st Sess. 362 (1977), *reprinted in* U.S.C.C.A.N. 5963, 6318. S. REP. NO. 989, 95th Cong., 2nd Sess. 76 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5862. Second, valuations are commonly made many times in the bankruptcy process and are always a snapshot of one place and time although, in actuality, values change over time.[2] However, for bankruptcy purposes, they are fixed.

### *The Debtor's Spouse's Homestead Election*

■ The second issue raised by the Appellant is that the bankruptcy court

---

2. *See* 11 U.S.C. §§ 362(d)(2)(A); 363(j), 364(d)(1)(B), 506(a) and 1129(a)(7)(A).

should have taken into consideration the fact that his spouse had filed a homestead election pursuant to Massachusetts law. The Panel disagrees. On the facts of this case, the spouse's homestead election is not part of the equation under section 522(f). Section 522(b) provides that the debtor elect the federal exemptions or, *in the alternative,* the state exemptions. The Appellant elected the federal exemptions as opposed to those exemptions that would be applicable under Massachusetts law. For purposes of this appeal, that exemption is a fixed amount of $15,750 pursuant to section 522(d)(1). Section 522(f)(B)(2) pertains only to liens and exemptions. The spouse's homestead election is not a lien, judicial or consensual. The spouse's homestead exemption is not the Debtor's exemption in this case since he elected the federal exemptions.[3]

### *Conclusion*

For the reasons set out herein, the decision of the bankruptcy court is affirmed with the modification that there shall be no reconsideration of the amount of the impairment.

**SO ORDERED.**

---

**3.** Had the Debtor elected the Massachusetts exemptions, the result may have been different. *See In re Sebio,* 237 B.R. 1 (Bankr. D.Mass.1999).