**In re Robert RYAN, Debtor.**

No. 01–474–L.

United States District Court, D. Rhode Island.

Sept. 6, 2002.

Peter G. Berman, Raskin & Berman, Providence, RI, for Plaintiff.

Louis A. Geremia, Geremia & DeMarco, Providence, RI, for Defendant.

Sheryl Serreze, Office of U.S. Trustee, Providence, RI, Trustee.

## DECISION AND ORDER

LAGUEUX, Senior District Judge.

This matter is before the Court on Debtor Robert Ryan's appeal from a Decision and Order entered by the United States Bankruptcy Court for the District of Rhode Island on July 25, 2001. Ryan appeals the Bankruptcy Court's decision to approve the Trustee's Notice of Sale of Ryan's survivorship interest in real estate and the determination that the Trustee did not engage in champerty. For the reasons stated below, the Decision and Order of the Bankruptcy Court is affirmed.

## BACKGROUND

The facts as found by the Bankruptcy Court are as follows:

On October 5, 2000, Robert Ryan ["Ryan"] filed for Chapter 7 relief under the United States Bankruptcy Code. At the time of the filing, Ryan included on his Schedule A a one-half interest in real estate located at 10 Henry Drive in Barrington, Rhode Island. Ryan listed the fair market value of the property, owned as tenants by the entirety with his non-debtor spouse, at $250,000, with an existing $95,000 mortgage to Valuation Concepts, Inc. 11 U.S.C. § 522(b) required Ryan to choose between state and federal exemption schemes, and he elected state exemptions under § 522(b)(2). At the time of filing, Rhode Island recognized as exempt up to $100,000[1] in a homestead estate. R.I. Gen. Laws § 9–26–4.1.

On March 28, 2001, Chapter 7 Trustee Louis A. Geremia ["the Trustee"] filed a Notice of Sale, ["the Notice"] requesting authority to sell Ryan's survivorship interest in the property to Jack F. Sullivan ["Sullivan"]. As the largest unsecured creditor in the amount of $186,000, Mr. Sullivan offered to purchase the survivorship interest for $5,000. On April 6, 2001, Ryan responded by filing an Objection to the Notice, arguing that his interest in the property was wholly protected by the Rhode Island Homestead Act.

In his objection, Ryan raised three points of contention. First, Ryan argued that as a tenant by the entirety his future expectancy interest in the entireties estate is exempt from both sale and attachment. Second, Ryan reasoned that even if an expectancy interest may be sold, his own share of the interest is exempt under the Homestead Act. Specifically, Ryan asserted that his present interest in the entireties property is one-half of the total equity, and thus falls within the exemption granted by the Rhode Island Homestead Act. Ryan reasoned that because the fair mar-

ket value of the property, minus encumbrances, is $155,000, his own share is worth $77,500, and well within the $100,000 exemption. Lastly, Ryan argued that the contract between the Trustee and Mr. Sullivan to sell Ryan's future interest in the entireties property is void for champerty.

In an opinion dated July 25, 2001, Bankruptcy Judge Vololato determined Ryan's interest to be 100% of the total equity. The Bankruptcy Court reasoned that because the property has an equity of $155,000, the $100,000 Homestead exemption does not cover all interests, and therefore, the Trustee could sell Ryan's remaining interest. Referring to settled Rhode Island law, Judge Vololato held that Ryan's contingent future expectancy interest is a marketable and non-exempt asset. Accordingly, the Bankruptcy Court, relying upon the Trustee's business judgement that the sale was in the best interest of the estate, approved the Notice of Sale. The Bankruptcy Court briefly concluded by noting that implicit in its decision was the finding that the Trustee had not engaged in champerty.

On October 3, 2001, Ryan appealed the Bankruptcy Court's decision. In response the Trustee filed a Motion to Dismiss Ryan's appeal on the grounds of lack of jurisdiction. In his Motion to Dismiss, the Trustee argued that because a survivorship interest constitutes an asset of the estate, Ryan is no longer a person aggrieved and thus has no standing to appeal from the Bankruptcy Court order. This Court denied the Motion to Dismiss on December 17, 2001; and, on May 10, 2002, this Court heard oral argument on Ryan's appeal and took this matter under advisement. The matter is, now, in order for decision.

---

1. Currently, R.I. Gen. Laws § 9–26–4.1 pro- vides a $150,000 homestead exemption.

## DISCUSSION

### I. Jurisdiction and Standard of Review

 This Court has jurisdiction to hear appeals from judgements, orders, and decrees of the Bankruptcy Court. *See* 28 U.S.C. § 158(a). On appeal from a decision of the Bankruptcy Court, this Court sits as an intermediate appellate court. Such appeals are "taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeal from the district courts." *Id.* § 158(c)(2); *see also In re Mayhew*, 223 B.R. 849, 854 (D.R.I.1998). Accordingly, the standard of review is a bifurcated one. While the Bankruptcy Court's findings of fact are reviewed for clear error, *see* Fed. R. Bankr.P. 8013, its conclusions of law are afforded plenary review, *see In re Edmonston*, 107 F.3d 74, 75 (1st Cir.1997); *In re Williams*, 190 B.R. 728, 732 (D.R.I.1996). Furthermore, this Court is not bound to remain within the confines of the Bankruptcy Court's reasoning for its decision, but is free to affirm the decision below on any ground supported by the record. *See In re Erin Food Servs., Inc.*, 980 F.2d 792, 801 (1st Cir.1992); *In re Hemingway Transport, Inc.*, 954 F.2d 1, 9 (1st Cir. 1992).

### II. Analysis

Ryan has raised three principal issues in this appeal:

(1) Whether the Bankruptcy Court erred in approving the Trustee's Notice of intended sale of the right of survivorship in the Debtor's real estate;

(2) Whether the Bankruptcy Court erred in determining that the Debtor's right of survivorship was not exempt; and

(3) Whether the Bankruptcy Court erred in determining that the Trustee's Notice of intent to sell the right of survivorship was not void for champerty.

This Court will address each of these issues in turn.

### A. Sale of Survivorship Interest

In his appeal of the Bankruptcy Court's decision, Ryan argues that the Bankruptcy Court erred in approving the sale of his contingent future interest in the entireties property because the decision is a judicial restriction on the protection afforded to tenants by the entirety. Ryan reasons that an expectancy interest is exempt from attachment and sale, and that under a tenancy by the entirety married couples are entitled to be shielded from even the farthest reach of creditors. For the following reasons, this Court affirms the Bankruptcy Court's decision and concludes that the protection afforded a tenancy by the entirety is not jeopardized by the sale or attachment of an expectancy interest.

 Rhode Island common law recognizes and allows the creation of a tenancy by the entirety.[2] As the colonists emigrated from England to Rhode Island, so did the estate of tenancy by the entirety, which retains its English common law roots. *See Bloomfield v. Brown*, 67 R.I. 452, 25 A.2d 354, 356 (1942). A tenancy by the entirety requires not only the requisite four unities of time, title, interest, and possession, but also can exist solely between two married individuals. *Cull v. Vadnais*, 122 R.I. 249, 406 A.2d 1241, 1244 (1979).

 Intended as a method of protecting the property rights of the married

---

2. A tenancy by the entirety is a form of joint tenancy that arises between husband and wife when a single instrument conveys realty to both of them but nothing is said in the deed or will about the character of their ownership. Blacks Law Dictionary 1477 (7th ed.1999).

woman, the tenancy by the entirety creates a right of survivorship in each spouse. *See Van Ausdall v. Van Ausdall,* 48 R.I. 106, 135 A. 850, 851 (1927). Though not recognized in all states, the tenancy by the entirety, where preserved, serves to protect wives and children in the use of the family home. *Harris v. Crowder,* 174 W.Va. 83, 322 S.E.2d 854, 858 (1984). A tenancy by the entirety also protects the interests of both spouses by ensuring that for the duration of the marriage, or for as long as the tenancy exists, the estate cannot be "severed, terminated, or partitioned by either spouse without the assent of the other." *In re Snyder,* 249 B.R. 40, 44 (1st Cir. BAP 2000) (citation omitted).

In bankruptcy, the protection afforded to the estate during the tenancy prevents the debtor's interests from being alienated from the estate without the non-debtor spouse's consent. Consequently, the estate is not subject to levy and sale on a judgement entered against the debtor spouse alone. *Bloomfield,* 25 A.2d at 359. Because the present interests of both the debtor and non-debtor spouses are conjoined under the tenancy by the entirety, Rhode Island law forbids the levy and sale of a tenancy by the entirety, but allows for prejudgment attachment of the debtor spouse's interest in the entireties property. *See generally Cull,* 406 A.2d at 1245. "[I]f the husband and wife [do] not convey their property before one spouse dies, and if the debtor spouse survives the death of the other spouse, the creditor may enforce the prior attachment...." *Id.* at 258, 406 A.2d 1241; *see also In re Gibbons,* 17 B.R. 373, 374 (Bankr.D.R.I.1982).

Thus, it is well established under Rhode Island law that an entireties property is shielded from the reach of creditors until the tenancy is dissolved or the debtor spouse survives the non-debtor spouse. Importantly, creditors not only may attach property that is owned as tenants by the entirety, but also may "sell the contingent future expectancy interest which the attachment entails (if anyone can be persuaded to purchase it)...." *In re Furkes,* 65 B.R. 232, 236 (D.R.I.1986); *see also In re Bois,* 191 B.R. 279, 280 (Bankr.D.R.I.1996). Thus the *Furkes* and *Bois* decisions reflect the judiciary's willingness to protect the interest of the non-debtor spouse while at the same time allowing creditors to reach the debtor once his interests are no longer conjoined with those of his spouse.

Applying these principles to the instant case, it is clear that the Trustee is legally entitled to sell Ryan's contingent future expectancy interest. 11 U.S.C § 544(a)(1) grants the Trustee status as a hypothetical lien creditor. In this case, the Trustee, acting as lien creditor, may assert an attachment lien on Ryan's interest in the property and may lawfully sell the related expectancy interest to Sullivan. *See In re McConchie,* 94 B.R. 245, 249 (Bankr.D.Mass.1988); *In re Robbins,* 187 B.R. 400, 404 (Bankr.D.Mass.1995). Because Sullivan has been "persuaded" to purchase Ryan's expectancy interest in the estate located at 10 Henry Drive, the Notice of Sale was proper, and the Decision of the Bankruptcy Court was appropriate. *Furkes* 65 B.R. at 236.

It should be noted that the contingent nature of the expectancy interest presents a dubious future return for Sullivan. Were Ryan's wife to survive him, the tenancy by the entirety would be extinguished along with all of Ryan's interest in it. In that eventuality, Ryan's wife would "take free and clear of the attachment, which would then be of no further force and effect." *Furkes,* 65 B.R. at 235 (citing *In re Gibbons,* 459 A.2d 938 (R.I.1983)). This is the gamble that Sullivan, or any pur-

chaser of a contingent future expectancy interest, must take.

## B. Exemptions and Valuation

Ryan further argues that if Rhode Island law does allow for a debtor's contingent future expectancy interest to be sold, his own interest is spared because of the exemption afforded to him by 11 U.S.C. § 522(b)(2). Having elected the state exemptions of § 522(b)(2) over the federal exemptions of § 522(b)(1), Ryan is entitled to the Rhode Island Homestead Act exemption of R.I. Gen. Laws § 9–26–4.1. Ryan argues that the Bankruptcy Court has assigned an incorrect value to his interest, and that as a result his state exemption has been lost. Ryan rejects the 100% valuation made by the Bankruptcy Court and believes that it should be 50% of the total equity because to hold otherwise would be contrary to the Rhode Island Married Women's Rights Act and would also impose a marriage penalty within the Homestead exemption. This Court finds Ryan's arguments devoid of merit.

## 1. Determination of Valuation

 Ryan contends that he has been robbed of the Homestead exemption afforded to him by the state. The Homestead exemption is a long-standing precept of property law formulated to protect the family and the home from the reach of creditors. *See* 40 Am.Jur.2d Homestead § 4 (1999). The Rhode Island Homestead Act § 9–26–4.1 states that

> an estate of homestead to the extent of one hundred fifty thousand dollars ($150,000)[3] in the land and buildings may be acquired pursuant to this section by an owner or owners of a home or one

or all who rightfully possess the premise by lease or otherwise, and who occupy or intent to occupy said home as a principal residence. Said estate shall be exempt from the laws of attachment, levy on execution and sale for payment of debts or legacies....

R.I. Gen. Laws § 9–26–4.1 (2002). The statute further specifies that "for the purposes of this section, an owner of a home shall include a sole owner, joint tenant, tenant by the entirety or tenant in common...." *Id.* Consequently, whether a particular debtor's interest in the property may be attached and the expectancy interest sold depends upon the valuation of the interest.

 Ryan's argument hinges on his belief that his equity interest in the entireties property is $77,500, or 50% of the unencumbered value of the estate. The very nature of the tenancy by the entirety, however, precludes such an assertion. "An estate by the entirety is held by both the husband and wife in *single* ownership, by a *single* title. They do not take by moieties, but both and each take the whole estate, that is to say, the entirety. The tenancy results from the common-law principle of marital unity; and is said to be sui generis." *Lang v. Commissioner of Internal Revenue,* 289 U.S. 109, 111, 53 S.Ct. 534, 535, 77 L.Ed. 1066 (1933)(emphasis added).

The tenancy by the entirety is a unitary title under which each tenant holds *per tout et non per my.*[4] *Cull,* 406 A.2d at 1244. Consequently, "each party holds all of the property-yet neither holds a separate or divisible share." *Furkes,* 65 B.R. at 234 (*citing* 4 Thompson, Real Property

---

**3.** At the time that Petitioner filed for exemption, the Homestead exemption stood at $100,000. *See* R.I. Gen. Laws § 9–26–4.1 (2000).

**4.** *Per tout et non per my* is French for "by the whole and not by the half". Blacks Law Dictionary 1165 (7th ed.1999).

§ 1748 at 61–64 (1979)). It follows that because the married individuals in a tenancy by the entirety do not own separate shares, neither Ryan's present or future interest in the entireties estate can be differentiated from that of his wife.

In determining the valuation of interests in tenancy by the entirety, First Circuit courts agree that because the tenancy is a unitary title, each spouse is guaranteed an equal right to the full interest in the property, and thus each interest must be valued at 100%. *See Snyder*, 249 B.R. at 46 (citations omitted). The Bankruptcy Court in *Strandberg* found that the provisions of Rhode Island law are compatible with those relied upon in *Snyder*, and consequently held that the debtor's interest in a tenancy by the entirety was 100% of the property value. *In re Strandberg*, 253 B.R. 584, 589 (Bankr.D.R.I.2000); *see also In re Homonoff*, 261 B.R. 551, 555 (Bankr. D.R.I.2001). In this case, Ryan's remaining equity may be sold by the Trustee because the proper valuation of Ryan's interest in the property is 100%, or $155,000, and thus not completely protected by the statutorily exempted amount of $100,000.

A recent ruling by the United States Supreme Court may raise questions concerning this valuation. The Court in *United States v. Craft* held that for the purpose of the federal tax lien statute, 26 U.S.C. § 6321, "respondent's husband's interest in the entireties property constituted 'property' or 'rights to property'...." *Craft*, —— U.S. ——, 122 S.Ct. 1414, 1425, 152 L.Ed.2d 437 (2002). Though the Court acknowledged that each spouse has a property interest in the entireties estate, it further explained that "each tenant possesses individual rights in the estate sufficient to constitute 'property' or 'rights to property' for the purpose of the lien...." *Id.*, 122 S.Ct. at 1419. Significantly, the Court refused to address the issue of valuation, and therefore left unanswered the question of whether, for the purpose of a federal tax lien, each tenant by the entirety possessed something other than 100% of the equity. *See Id.*, 122 S.Ct. at 1425.

The decision in *Craft*, however, is distinguishable on its facts. In *Craft*, the taxpayer's failure to pay federal income taxes resulted in the attachment of a federal tax lien on the entireties property. Unlike the instant case, which involves Chapter 7 Bankruptcy, the rationale behind the *Craft* decision rests on issues concerning federal taxation. The Court relied upon the statutory language of § 6321 to hold that Congress intended to reach any and all of a taxpayer's interest in his property to satisfy the collection of taxes. *Id.*, 122 S.Ct. at 1422–23.

*Craft* gives no indication that the reasoning therein should be extended beyond federal tax law. Rhode Island law already acknowledges that where the estate is to be sold for tax reasons, the Homestead exemption does not apply. *See* R.I. Gen. Laws § 9–26–4.1(1). Thus, it is evident that the factors allowing Rhode Island exemptions from debt repayment are not analogous to those in situations involving tax liability. Thus, the Supreme Court's decision in *Craft* sheds no new light on the instant situation.

2. Married Women's Rights Act

■■■■ Ryan's next argument is that a 100% valuation is contrary to the Married Women's Rights Act ("the Act") but that also fails. The Act provides in pertinent part that:

The real estate, chattels real, and personal estate which are the property of any woman before marriage, or which may become the property of any woman after marriage, or which may be acquired by her own industry, including

damages recovered in suits or proceedings for her benefit and compensation for her property taken for public use, and the proceeds of all this property, shall be and remain her sole and separate property free from control of her husband.

R.I. Gen. Laws § 15–4–1. Originally enacted in 1844, the Act aimed to improve the status of a woman's property rights. Prior to the enactment of the Act, a married woman's property rights were virtually nonexistent, and she enjoyed no individual rights to the property she may have owned before the marriage or acquired during the marriage. *Landmark Med. Ctr. v. Gauthier,* 635 A.2d 1145, 1149 (R.I. 1994).

 The Rhode Island Supreme Court in *Bloomfield v. Brown* rejected the idea that estates by the entirety and the Married Women's Act directly contradicted each other. *See Bloomfield,* 25 A.2d at 359. Instead, the *Bloomfield* Court noted that the effect of the Act is "to raise up the wife, in the eyes of the law, to the same position as that of the husband, thus entitling her to take and hold real estate in her own right as a natural person in any manner permitted ..." *Id.* Thus, the Act applies to a tenancy by the entirety only to the extent that it prevents the husband, during the marriage, from exercising exclusive possession and control of the entireties estate. *Id.,* 25 A.2d at 360.

Ryan argues that the 100% valuation assigns the full entireties interest to the husband, leaving the wife without an interest in the estate. That is simply not so. The valuation of the entireties property applies to *both* the husband and the wife, providing each with a complete and undivided share of the estate. In the instant case, neither the present nor the future interests of the non-debtor spouse are jeopardized by the 100% valuation and

subsequent sale of Ryan's contingent future expectancy interest in the entireties estate. Where each party has a 100% share of the interest, neither may individually exert control over the estate, thereby removing the marriage penalty imposed before the Act became effective.

 Accordingly, the proper valuation of Ryan's interest, and that of his wife, is 100%. As a result, Ryan's interest in the property does not fall completely within the protective umbrella of the Homestead Act's $100,000 exemption. This Court, therefore, affirms the Bankruptcy Court's determination that Ryan's contingent future expectancy interest in the entireties property is not exempt.

3. On Tenancy by the Entirety

 Ryan contends that in upholding the Bankruptcy Court's decisions, this Court would be reading a hidden marriage penalty into the Homestead Act. Despite the above mentioned justifications for the ruling, a clarification is warranted to dispel Ryan's assertions. Instead of a marriage penalty resulting from this Court's interpretation of the applicability of the Homestead exemption, it is the nature of the tenancy by the entirety that results in the so-called penalty. It must be understood that "the archaic fiction of a tenancy by the entireties is preserved *only* because it makes it almost impossible for creditors to reach a debtor's family house." *Harris,* 322 S.E.2d at 858–59. Thus, a tenancy by the entirety may benefit the tenant little other than by providing such protection, and it may serve to produce unwanted results.

 When electing to enter into a tenancy by the entirety, one is taking the bitter with the sweet. Under Rhode Island law, a tenancy by the entirety must be specifically and knowingly entered into

by a married couple. The Supreme Court of Rhode Island has held that "unless a tenancy by entirety is manifest in a deed to husband and wife, a deed to them as joint tenants will be construed as creating a joint tenancy by moieties and not a tenancy by entirety, as at common law." *Bloomfield*, 25 A.2d at 358 (interpreting *Van Ausdall*, 135 A. at 851). Thus, once a married couple has knowingly and willingly opted for a tenancy by the entirety, they should anticipate both the benefits and penalties that may result from its application.

Once a couple elects a tenancy by the entirety, each spouse takes a 100% interest in the estate, and neither party's interest may be alienated from the other for as long as the estate endures. This aspect of tenancy by the entirety enables the couple to be immunized from the "grasp (but not reach) of a creditor until such time as the debtor outlives his non-debtor spouse." *Furkes*, 65 B.R. at 235. In the case at bar, this immunization serves its function, though the accompanying valuation prevents all of Ryan's interests from falling within the Homestead exemption. However, in the circumstance where the equity in the entireties estate were to fall within the statutory exemption, both the present and future interest in the estate would be exempt because there would be no interest left to attach. Thus, it is Ryan's particular circumstances, and the fact that the total equity in the property exceeds the statutory exemption, that allows the Trustee to reach the remaining interest and use it to satisfy creditors.

 In contrast to a tenancy by the entirety, neither a joint tenancy or a tenancy in common affords protection to the estate for the duration of the tenancy. Even where a husband and wife own property as joint tenants or as tenants in common, "it is presumed, in the absence of

clear and convincing evidence to the contrary, that each holds an undivided one-half interest in the whole. This is so because such tenants are said to hold *per my er per tout.* . . . " *Lucchetti v. Lucchetti*, 85 R.I. 105, 127 A.2d 244, 248 (1956). To satisfy debt, creditors of one tenant may reach that tenant's interest and force partition. See *Harris*, 322 S.E.2d at 862. Where partition of the co-tenancy is impractical, a Chapter 7 trustee may sell both the debtor's one-half interest and that of the non-debtor. *In re Block*, 259 B.R. 498, 507 (Bankr.D.R.I.2001) (citing 11 U.S.C. § 363(h)).

Ryan argues that if he and his wife had not been married at the time of bankruptcy, the estate would have been shielded. While Ryan's assertion is factually true, it is clear that the situation is of his own making. Had Ryan and his wife elected a joint tenancy or a tenancy in common, the valuation would have allowed him a full exemption. However, Ryan and his spouse would not have been afforded the luxury of knowing that whatever the equity of the estate, creditors could not grasp it while the tenancy endured. Ryan chose a tenancy by the entirety, and will reap its benefits for the duration of the tenancy, but he may lose the property if his wife pre-deceases him. Yet, if Ryan is early dealt the hand of fate, the estate will fall unencumbered to his spouse.

In conclusion, the proper valuation of Ryan's interest in the entireties estate is 100%. This Court concludes that the 100% valuation does not violate the text or spirit of the Married Women's Rights Act, and it does not create an unintended marriage penalty within the Homestead exemption. Therefore, this Court affirms the valuation made by the Bankruptcy Court, and concludes that Ryan's future expectancy interest is not exempt from the reach of creditors.

## C. Champerty

 Rhode Island case law is clear that "a contract between an attorney and counselor at law and a client, that the attorney shall prosecute a claim at his own cost and charge, for a part of the subject in litigation, is champertous, illegal, and void." *Martin v. Clarke*, 8 R.I. 389 (1866); *see also In re Primus*, 436 U.S. 412, 424 n. 15, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978) (defining champerty as "maintaining a suit in return for a financial interest in the outcome." citations omitted); *Toste Farm Corp. v. Hadbury, Inc.*, 798 A.2d 901, 905 (R.I.2002).

 Ryan alleges that the agreement made between the Trustee and Sullivan is void as a contract of champerty. In this case, there is nothing to indicate that the Trustee has become involved in the suit so as to improve his own financial interests. Indeed, the Trustee's attempt to sell Ryan's survivorship interest is fully within the scope of his duties as delegated to him by 11 U.S.C. § 704. The Trustee's duties include, *inter alia*, the collection and reduction to money of the property of the estate as expeditiously as possible and in the best interests of all parties. *Id.* at § 704(1). Similarly, under 11 U.S.C. § 544, a Trustee enjoys the status of lien creditor and thus is entitled to the rights and powers of that position.

Here, there is nothing to support the proposition that the Trustee has deviated from the duties assigned to him under the United States Bankruptcy Code. Consequently, this Court upholds the finding made by the Bankruptcy Court that the Trustee has not engaged in champerty.

### CONCLUSION

For the reasons given above, the Decision and Order of the Bankruptcy Court, dated July 25, 2001, hereby is affirmed.

The Clerk shall enter judgement to that effect.

It is so ordered.