**In re Steven SNYDER, Debtor.**

**Bankruptcy No. 98–11951–CJK.**

United States Bankruptcy Court, D. Massachusetts.

March 18, 1999.

Richard Blumenthal, for debtor.

Jeffrey D. Ganz, Boston, MA, for Rockland Trust Company.

Eric Bradford, Boston, MA, for United States Trustee.

### MEMORANDUM OF DECISION ON MOTION TO AVOID LIEN OF ROCKLAND TRUST COMPANY

CAROL J. KENNER, Chief Judge.

The Debtor has moved under § 522(f) of the Bankruptcy Code, 11 U.S.C. § 522(f), to avoid a $65,000 judicial lien, an attachment, held by Rockland Trust Company on his interest (and his alone) in certain real property that he and his wife, Laura Snyder, own in a tenancy by the entirety. The parties

agree that the property has a total value of $239,000 and that both the Debtor's and his wife's interests in it are encumbered by liens senior to Rockland's—a tax lien and two mortgages—to the total extent of $166,-536.82. The Debtor has claimed his interest in the property as exempt under 11 U.S.C. § 522(d)(1) and (5) to the extent of $15,750. In the present motion, the Debtor argues that, because he owns the property with his wife, his interest in the property extends to only half of the property's total value. Consequently, he concludes, the full amount of Rockland's attachment impairs his exemption and therefore, under § 522(f)(1)(A), may be avoided. Rockland opposes the motion, arguing that the lien-avoidance provision of § 522(f) is unconstitutional because it effects an uncompensated taking of property, in violation of the Takings Clause of the Fifth Amendment of the United States Constitution; and, in the alternative, that the interest of a tenant by the entirety extends to the whole value of the property, such that only a small portion of Rockland's lien impairs the Debtor's exemption and may be avoided. For the reasons set forth below, I conclude (1) that § 522(f) does not effect an uncompensated taking of Rockland's lien rights and (2) that, because the extent and value of the Debtor's interest is largely dependent on how the tenancy by the entirety is eventually terminated, and because both parties' rights in the property are protected until that occurs, the Court can and should enter only a provisional order that preserves the parties' rights until the tenancy is terminated and this matter can then be reconsidered.

### 1. *Section 522(f) and the Takings Clause*

■ In a soundly reasoned opinion that is directly on point, the Bankruptcy Appellate Panel of the First Circuit recently rejected a Takings Clause challenge to the lien avoidance power supplied in § 522(f). *In re Leicht*, 222 B.R. 670, 681–685 (1st Cir. BAP 1998). The Panel ruled that if the lienholder acquired its judicial lien after enactment (in 1978) of § 522(f), "the lien was born subject to [the Debtor's] right to avoid it pursuant to § 522(f)(1)," and therefore the Debtor's avoidance of the lien in bankruptcy effected no diminution or taking of the lienholder's

lien rights. *Id.* at 683–684. Even more recently, the First Circuit Court of Appeals adopted the reasoning of *Leicht* and held that, because the lienholder's lien rights were circumscribed from their inception by the Debtor's ability under the Bankruptcy Code to avoid the lien, the prospective application of § 522(f) did not constitute a "taking" of the lienholder's property interest within the meaning of the Fifth Amendment Takings Clause. *Patriot Portfolio, LLC v. Weinstein (In re Weinstein)*, 164 F.3d 677 (1st Cir. 1999). In the present matter, Rockland obtained its attachment in December, 1997; as in *Leicht* and *Weinstein*, its lien does not antedate, but rather was created subject to, the law that enables the Debtor now to avoid the lien. Therefore, on the basis of *Leicht* and *Weinstein*, I must conclude that § 522(f) does not effect an unconstitutional taking of Rockland's lien rights.

### 2. *Valuation for Section 522(f) of An Interest in Property Held as Tenants by the Entirety*

■ Section 522(f) permits a debtor to avoid the fixing of a lien on an interest of the debtor in property only to the extent that the lien impairs an exemption to which, but for the lien, the debtor would have been entitled. 11 U.S.C. § 522(f). The statute specifies that

for the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—

(i) the lien,

(ii) all other liens on the property; and

(iii) the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C. § 522(f)(2)(A). Rockland and the Debtor disagree on only one variable in this formula: the value that the debtor's interest in the property would have in the absence of any liens. Rockland contends that, because a tenancy by the entirety is a unitary and undivided interest, the interest of a tenant by the entirety should, for purposes of lien

avoidance under § 522(f), be deemed to extend to the whole value of the property. If Rockland is correct, then only $8,286.82 of its $65,000 lien would be deemed to impair the Debtor's exemption [1]; the balance of the lien could not be avoided. The Debtor, on the other hand, contends that, because he shares title to the property with his wife, and—because, as a male and the older of the spouses, he is likely to predecease her, which, by virtue of her right of survivorship, would result in her accession to his interest, free and clear of liens thereon—his interest in the property is no more than fifty percent of its value, and probably less. If the Debtor is correct, then *all* of Rockland's lien would be deemed to impair the Debtor's exemption,[2] such that the lien would have to be avoided in its entirety.[3]

How, for purposes of lien avoidance under § 522(f), does one value the interest of one spouse in property held in a tenancy by the entirety? Because the question asks for the meaning of "the value that the debtor's interest in the property would have in the absence of any liens," as that phrase is used in § 522(f), the question is one of federal law. However, its answer requires an understanding of the Debtor's interest in and rights with respect to the property; and these are a function of the law of Massachusetts, as the state in which the real property is located.

### a. *Tenancy by the Entirety in Massachusetts*

The concept of a tenancy by the entirety derives from the common law. *Coraccio v. Lowell Five Cents Savings Bank,* 415 Mass. 145, 148, 612 N.E.2d 650 (1993). Massachusetts courts still look to the common law for most of its attributes, except that, with respect to tenancies by the entirety created after February 11, 1980, the common law was modified in certain respects by statute, G.L. c. 209, § 1, "in an attempt to equal-

1. The sum of Rockland's lien ($65,000), all other liens on the property ($166,536.82), and the amount of the exemption ($15,750) is $247,286.82, which exceeds the agreed value of the property ($239,000) by $8,286.82.

2. The sum of Rockland's lien ($65,000), all other liens on the property ($166,536.82), and the amount of the exemption ($15,750) is $247,286.82, which exceeds fifty percent of the agreed value of the property ($119,500) by $127,786.82, well in excess of the amount of Rockland's lien.

3. If the Debtor's interest is limited to fifty percent of the property's value, then, even if Rockland's lien were avoided, he would have no equity in the property. Both parties assume that this present lack of equity to fund the Debtor's exemption does not affect his ability to avoid Rockland's lien under § 522(f). This assumption is contrary to certain decisions that preceded the 1994 amendment of § 522(f)—see *In re Sanders,* 39 F.3d 258 (10th Cir.1994) and cases cited (a debtor cannot use § 522(f) to avoid a lien beyond the extent to which, if the lien were avoided, he would have equity in the property) and *In re Menell,* 37 F.3d 113 (3d Cir.1994) (same). But conforms to § 522(f) *as amended in 1994,* as evidenced by the plain meaning of the statutory definition of impairment, § 522(f)(2)(A) (added by § 303 of the Bankruptcy Reform Act of 1994, Pub.L. 103–394 (Oct. 22, 1994)), and by the legislative history of the 1994 amendment that added it to § 522(f) it, as expressed in the House Report:

> Because the Bankruptcy Code does not currently define the meaning of the words "impair an exemption" in section 522(f), several court decisions have, in recent years, reached results that were not intended by Congress when it drafted the Code. This amendment would provide a simple arithmetic test to determine whether a lien impairs an exemption, based upon a decision, *In re Brantz,* 106 B.R. 62 (Bankr.E.D.Pa.1989), that was favorably cited by the Supreme Court in *Owen v. Owen,* 500 U.S. 305, 111 S.Ct. 1833, 1838, n. 5.
>
> The decisions that would be overruled involve several scenarios. The first is where the debtor has no equity in a property over and above a lien senior to the judicial lien the debtor is attempting to avoid, as in the case, for example, of a debtor with a home worth $40,000 and a $40,000 mortgage. Most courts and commentators had understood that in that situation the debtor is entitled to exempt his or her residual interests, such as a possessory interest in the property, and avoid a judicial lien or other lien of a type subject to avoidance, in any amount, that attaches to that interest. Otherwise, the creditor would retain the lien after bankruptcy and could threaten to deprive the debtor of the exemption Congress meant to protect, by executing on the lien. Unfortunately, a minority of court decisions, such as *In re Gonzalez,* 149 B.R. 9 (Bankr. D.Mass.1993), have interpreted section 522(f) as not permitting avoidance of liens in this situation. The formula in the section would make clear that the liens are avoidable.

H.R.Rep. No. 835, 103rd Cong., 2nd Sess. 41–42 (Oct. 4, 1994); 140 Cong.Rec. H10770 (Oct. 4, 1994).

ize the rights of men and women holding property as tenants by the entirety." *Id.* at 151, 612 N.E.2d 650. The tenancy by the entirety at issue in this case was created after the effective date of the statute and so is subject to the statutory modification. Accordingly, the law set forth below pertains to tenancies by the entirety created after the statutory modification, not necessarily to those created before the modification.

▪ A tenancy by the entirety is a form of concurrent ownership that can exist only between co-owners who are husband and wife. *Id.* at 148, 612 N.E.2d 650. In such a tenancy, husband and wife "are seised of the estate so granted *as one person*, and not as ordinary joint tenants or tenants in common." *Id.* at 148, 612 N.E.2d 650, quoting from *Raptes v. Pappas*, 259 Mass. 37, 38, 155 N.E. 787 (1927) (emphasis added). Therefore, husband and wife hold the property not as "two tenants by the entirety," but as one person, in one tenancy. The point is more than semantic; it underscores that a tenancy by the entirety is a "unitary title": a title in which the interests of both husband and wife extend to the whole of the property, not merely to some fractional interest that the other does not also hold. *Coraccio*, 415 Mass. at 151, 612 N.E.2d 650.

▪ Each spouse's interest in and rights as to the whole are well-protected from compromise by the other. For as long as the marriage continues, the estate cannot be severed, terminated, or partitioned by either spouse without the assent of the other. *Id.* at 149, 612 N.E.2d 650. Either spouse may convey or encumber his or her own interest, *id.* at 152, 612 N.E.2d 650, but the interest so conveyed would be subject to the continuing rights of the other in the property, such that the interest conveyed would, among other things, be wholly defeasible upon the death of the conveying spouse and survivorship of the other. *Id.* The property held in a tenancy by the entirety can be attached by the creditors of one spouse, *Peebles v. Minnis*, 402 Mass. 282, 521 N.E.2d 1372 (1988), but, in a tenancy created after the effective date of G.L. c. 209, § 1, the debtor spouse's interest is not subject to seizure or execution by his or her creditors while the property remains the principal residence of the non-debtor spouse. G.L. c. 209, § 1.

▪ A tenancy by the entirety "continues during the existence of the marital relationship and cannot be changed except by death, divorce, a deed of both parties or a deed of one spouse to the other." *Campagna v. Campagna*, 337 Mass. 599, 605, 150 N.E.2d 699 (1958); *In re Conroy*, 224 B.R. 282, 285 (Bankr.D.Mass.1998) (Hillman, J.). Upon the occurrence of one of these events, however, the tenancy by the entirety is terminated, and the spouses' unitary title with it. What rights then replace that title? The answer depends on how the tenancy is terminated.

▪ If the tenancy is ended by the death of one spouse, that spouse's interest is wholly terminated and does not become part of his or her estate. *Petition of Smith*, 361 Mass. 733, 737, 282 N.E.2d 412 (1972) (property held by tenancy by the entirety passes to the survivor by operation of law and does not constitute a part of the decedent's estate). By right of survivorship, the survivor of the marriage "becomes seised as sole owner of the whole estate, regardless of anything the other may have done." *Coraccio*, 415 Mass. at 149, 612 N.E.2d 650, quoting from *Licker v. Gluskin*, 265 Mass. 403, 404, 164 N.E. 613 (1929). No conveyance by either spouse alone can defeat the other's right of survivorship. *Coraccio*, 415 Mass. at 151, 612 N.E.2d 650. By virtue of the right of survivorship, the interest of the first spouse to die is no more than a life estate. That spouse's interest terminates upon his or her death, and, with it, any interest acquired (by assignment or encumbrance, whether voluntary or not) from that spouse alone. *Id.* at 152, 612 N.E.2d 650 (interest that mortgagee of husband would acquire upon foreclosure would be wholly defeasible should the wife survive him).

▪ The tenancy can also be terminated by divorce or by sale of the property. Upon divorce, the tenancy by the entirety becomes a tenancy in common, *Bernatavicius v. Bernatavicius*, 259 Mass. 486, 490, 156 N.E. 685 (1927), and, in the divorce proceeding, the property is equitably apportioned

between husband and wife. G.L. c. 208, § 34. The tenancy might also be terminated by sale of the property by both spouses: either voluntarily, upon a deed of both parties; or involuntarily, by foreclosure on the mortgage given by both spouses to the mortgagee. Regardless of how the property is sold, any proceeds remaining after satisfaction of liens on both parties' interests would, because the tenancy has been terminated, not be held in a tenancy by the entirety, a unitary title. At that point, the parties' interests could be divided and apportioned (though they may elect to hold the proceeds jointly); and each spouse's interest would at last be subject to seizure or execution by creditors holding liens attaching to that interest alone.[4]

In two circumstances, property held in a tenancy by the entirety is subject to seizure and execution even before the tenancy is terminated. First, if and when the nondebtor spouse ceases to occupy the property as her or his principal residence, the property is subject to seizure and execution in satisfaction of a lien on the interest of the debtor spouse. G.L. c. 209. § 1. Second, regardless of whether either spouse continues to occupy the property as the principal residence, the property can be sold in satisfaction of a judicial lien securing an obligation of both parties. In the latter case, it would seem that, because the obligation being satisfied is one of both spouses, the creditor can reach the interests of both spouses in the property. In the former case, the statute permits the creditor to reach only the interest of the debtor spouse. G.L. c. 209, § 1 ("*The interest of a debtor spouse* in property held as tenants by the entirety shall not be subject to seizure of execution by a creditor of such debtor spouse so long as the property is the principal residence of the nondebtor spouse." (emphasis added)).

This survey of Massachusetts law shows that the extent of one spouse's interest in property held in a tenancy by the entirety is not fixed but contingent on (among other things) future events that determine how the tenancy is terminated and when it is liquidated. Pursuant to these events, a debtor spouse's interest will eventually come to one of three possible ends: (1) the debtor spouse will survive the nondebtor spouse and thereupon becomes seised of the whole estate, subject to seizure and execution by his creditors; (2) the debtor spouse will predecease the nondebtor spouse, resulting in termination of the decedent's interest and of liens attaching exclusively thereto; or (3) the tenancy will be terminated (by voluntary conveyance, foreclosure on a jointly given mortgage, or divorce) before the death of either spouse, resulting in termination of the unitary title, division or apportionment of the net proceeds among the spouses (or at least the possibility thereof), and vulnerability of the debtor spouse's interest in the proceeds to seizure or execution by creditors.

### b. *Back to § 522(f)*

I begin by rejecting Rockland's contention that, because a tenancy by the entirety is a "unitary title," giving both spouse's title to the entirety, that therefore the Debtors interest should be deemed equal to the full value of the property. The above review of Massachusetts law makes clear that the unitary title does not give each spouse the same rights in the property as he or she would have as sole owner. Each spouse's rights in the property are drastically circumscribed by those of the other. The Debtor's rights are limited by, among other things, his wife's right to occupy the premises for as long as she lives and by her right of survivorship.

I also reject the Debtor's contention that, because he shares title to the property with his wife, his interest is necessarily no more than half the value of the property. By

---

4. If real property that is held in a tenancy by the entirety is liquidated without the tenancy having been terminated, the net proceeds are themselves held as personalty in a tenancy by the entirety. *Ronan v. Ronan*, 339 Mass. 460, 463, 159 N.E.2d 653 (1959) (when property held in a tenancy by the entirety was taken by eminent domain, the net proceeds belonged to both spouses as tenants by the entirety; the husband was entitled to the income on this money during their joint lives [this was a pre–1980 tenancy, not subject to G.L. c. 209, § 1] and, upon the death of either, the survivor was entitled to all of it); *In re Coombs*, 86 B.R. 314, 316–317 (Bankr.D.Mass.1988).

virtue of his right of survivorship, his interest could, if his wife predeceases him, be transformed into sole ownership of the property. It is also possible that, upon termination of the tenancy by some other means—by divorce, or by sale—the Debtor's equitable share of the whole could be fixed at more than half. Certainly, if the Debtor's interest were appraised as of today, the contingencies and limitations to which his interest is subject would require a valuation at much less than the fair market value of the entirety. But, by virtue of the protections that the tenancy affords the nondebtor spouse, Rockland cannot enforce its lien until either the tenancy is terminated or the nondebtor spouse ceases to occupy the property as her primary residence. The proper focus under § 522(f) is on the extent of the Debtor's interest when the lienholder becomes free to enforce its lien.

■ In short, insofar as a debtor spouse's creditors are concerned, the extent of the debtor's interest in the tenancy by the entirety is indeterminate until the tenancy is terminated. It is indeterminate until then because (1) the manner in wich the tenancy is terminated affects the extent of the Debtor's rights thereafter and, (2) if the tenancy is terminated by some means other than the death of one of the spouses, it is only upon termination that the parties' interests become separate and can be quantified.[5] Because of this indeterminacy, any holding I might make today as to the extent of the Debtor's interest may turn out, upon termination of the tenancy by the entirety, to be unfair to one or the other of the parties to this motion. Consider these two scenarios.

■ Assume first that I rule that the Debtor's interest extends to the whole of the property. The ruling would be fair if the Debtor's wife were to predecease him, because then he would become sole owner of the whole property; Rockland could then foreclose on the unavoided portion of its lien, and, assuming no slippage in the value of the property, the value of the Debtor's exemption would be preserved. But the ruling would be unfair to the Debtor if tomorrow, by divorce or joint conveyance, his interest became that of a tenant in common. Then the Debtor would have an exclusive but undivided one-half interest in the property, and the unavoided portion of Rockland's lien would impair the value of his exemption. The ruling would then fail to accomplish the principal purpose of § 522(f), which is to secure to the Debtor the value of his exemption.

■ On the other hand, assume that I were to rule that the Debtor's interest extended only to the portion of the property (say, for purposes of argument, fifty percent) that would belong to the Debtor if the tenancy were terminated by a cause other than the death of one of the spouses. The holding would then be fair if the tenancy were terminated by a divorce in which he received a one-half interest or by conveyance from the Debtor and his wife to themselves as tenants in common. But it would be most unfair to Rockland if the tenancy were terminated by the death of the Debtor's spouse, because then the Debtor would own the entire property, with equity far in excess of the amount of his exemption, and Rockland, its lien having been entirely avoided, would get nothing. For the same reason, this ruling would also turn-out to be unfair to Rockland if the tenancy were terminated by a divorce in which the Debtor were awarded all of the equity in the property. In these circumstances, the ruling would fail to accomplish a second purpose of § 522(f), which is to avoid only so much of the lien as impairs the exemption. 11 U.S.C. § 522(f)(1) ("the debtor may avoid the fixing of a lien on an interest of the debtor in property *to the extent that* such lien impairs an exemption to which the debtor would have been entitled" (emphasis added)).

---

5. Notably, from the perspective of the debtor spouse's creditors, the value of the debtor's interest is also a moot issue until termination, because they cannot reach that interest until either the tenancy is terminated or the property ceases to be the residence of the nondebtor spouse (whereupon the creditor could proceed against the debtor spouse's interest and, by sale upon execution, terminate the tenancy). Likewise, the extent to which Rockland's lien on the property can be avoided is moot until Rockland becomes free to enforce its lien.

Clearly then, without knowledge of the future, the Court cannot but guess at how the tenancy will be terminated and, consequently, at the extent of the Debtor's interest in the property for purposes of this motion. This leaves the Court with three options. The first, which the Debtor urges the court to adopt, is to make an educated guess at what the future holds and to make a decision on that basis; but any decision rendered on that basis would be speculative and hardly immune from error. The second option would be to adopt a value that reflects the uncertainty about the future by splitting the difference between the parties' respective positions; this option would assure that the decision could not be wrong by more than half, but it also assures that, whatever the future holds, the value used will be wrong by half. Under both of these options, the Court's final order would enter now and bind the parties regardless of how the tenancy was eventually terminated. The third and more reasonable option is to enter a provisional order that resolves the motion in such a way that both parties' rights (the Debtor's exemption rights and the Rockland's lien) are preserved until the tenancy is terminated (or ceases to be the principal residence of the Debtor's spouse) and, upon reconsideration on the basis of actual knowledge about how the tenancy is terminated and the resulting extent of the Debtor's interest, the order can, if necessary, be revised.

The circumstances call for a provisional order. Accordingly, I will today adopt the more conservative of the remedies being urged upon me: the Court will avoid Rockland's lien only in part, based on the express assumption that, upon termination of the tenancy by the entirety, the Debtor's interest will extend to the whole of the property.[6] However, I will also expressly provide that, if (when the tenancy is terminated (either voluntarily or involuntarily) or when the non-debtor spouse ceases to occupy the property as her primary residence, such that Rockland becomes free to enforce its lien) the assumption proves to be wrong, the order shall be subject to reconsideration for changed circumstances, specifically, that the Debtor's interest does not at that time extend to the whole of the property (or the proceeds thereof), warranting avoidance of Rockland's lien to a greater extent.[7] This provisional order may turn out to not to require reconsideration (if upon termination of the tenancy, the Debtor's rights do extend to the whole of the property) or may turn out to be irrelevant (if the tenancy is terminated in a manner that, even if Rockland's lien is wholly avoided, leaves no equity for the Debtor). But, if circumstances ultimately do require that the order be reconsidered, both Rockland's lien rights and the Debtor's exemption will be protected until reconsideration.

A separate order will enter accordingly.

6. I use this assumption not because I have an opinion as to how things will turn out but because the result it dictates better preserves Rockland's lien rights pending termination of the tenancy and, if necessary, reconsideration of this order at that time. This way, Rockland's lien will remain of record until the tenancy is terminated. This serves two purposes: it preserves the priority of Rockland's lien pending termination of the tenancy and possible reconsideration; and it places the onus on the Debtor—the party who is more familiar with the ongoing status of the tenancy by the entirety and of the extent of his interest if and when it is terminated—to seek reconsideration if it is warranted. The value of the Debtor's exemption is protected pending reconsideration because, until then, the property will not be subject to seizure, execution, or liquidation.

7. Of course, upon reconsideration, § 522(f)(2)(A) would still be applied using the law and the values that existed as of the date of the bankruptcy filing, not as of the date on which the tenancy by the entirety is terminated. Therefore, the value of the property will remain the value that the parties have already agreed upon, the amounts of other liens on the property will be those used in this memorandum, and, regardless of future changes in § 522(d) and (f), the amount of the Debtor's exemption and the extent to which Rockland's lien can be avoided shall be determined by the currently existing version of § 522 of the Bankruptcy Code.