# United States Court of Appeals
## For the First Circuit

No. 22-1624

IN RE: NATALY MINKINA,

Debtor.

RODGERS, POWERS & SCHWARTZ, LLP,

Appellant,

v.

NATALY MINKINA,

Appellee.

APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Frank J. Bailey, U.S. Bankruptcy Judge]

Before

Barron, Chief Judge,
Howard and Montecalvo, Circuit Judges.

Dana E. Casher, with whom Casher Law Offices was on brief,
for appellant.
Marques C. Lipton, with whom Lipton Law Group, LLC was on
brief, for appellee.

August 24, 2023

**HOWARD**, **Circuit Judge**. This appeal requires us to assess the propriety of a valuation method espoused in the Bankruptcy Appellate Panel's ("B.A.P.") decision in Snyder v. Rockland Tr. Co. (In re Snyder), 249 B.R. 40 (1st Cir. B.A.P. 2000), for a debtor's interest in property held as a Massachusetts tenant by the entirety for purposes of the lien avoidance formula of 11 U.S.C. § 522(f). The bankruptcy court below departed from that approach, and appellant Rodgers, Powers & Schwartz, LLP ("RPS") -- a law firm that is the holder of the judicial lien that appellee Nataly Minkina seeks to avoid -- asserts that doing so constituted legal error. Finding no such error, we affirm the bankruptcy court's order. In doing so, we also clarify that the B.A.P.'s decision in Snyder both misapplied Massachusetts law and impermissibly derogated from the plain text of § 522.

## I.

We recite the factual background and procedural posture of this appeal, "rely[ing] principally on the bankruptcy court's recounting of the facts." Goat Island Condo. Ass'n v. IDC Clambakes, Inc. (In re IDC Clambakes, Inc.), 852 F.3d 50, 54 (1st Cir. 2017). In August 2018, Minkina filed a petition for relief under Chapter 13 of the Bankruptcy Code. In re Minkina, 631 B.R. 544, 546 (Bankr. D. Mass. 2021). She and her husband owned their home in Brookline, Massachusetts as tenants by the entirety as of the time of the filing of the petition. Id. The property was

subject to (1) two mortgages totaling $177,741 and (2) a judicial lien solely on Minkina's interest in the property in favor of RPS in the amount of $250,094.[1]  Id.  The latter originated from a Massachusetts Superior Court judgment that ordered Minkina to reimburse RPS for the expenses the law firm incurred in defending against a malpractice suit Minkina brought that the court ultimately deemed frivolous.  In addition, Minkina and her husband were entitled to a $500,000 homestead exemption, since Minkina's husband caused a homestead declaration to be recorded in December 2010 under then-applicable provisions of Massachusetts law.  Id.; see Mass. Gen. Laws ch. 188, § 1 (2010).

Minkina moved to avoid the RPS judicial lien in March 2019 on the grounds that the lien "impair[ed] her homestead exemption pursuant to 11 U.S.C. § 522(f)."  By way of context -- and as will be further discussed below -- the lien-avoidance formula of § 522(f)(2)(A) in part requires an assessment of "the value that the debtor's interest in the property would have in the absence of any liens."  Minkina agreed to a valuation of the property as a whole at $1,050,000 for purposes of the motion.  However, the point of contention in Minkina's case is how to appraise the value of her interest in the property as a tenant by the entirety for purposes of the formula.  Minkina urged the

---

[1]  For the sake of clarity and consistency, we use the figures cited by the bankruptcy court and round to the nearest dollar.

- 3 -

bankruptcy court to adopt either an actuarial approach to determining her share or to simply "treat [her share] as 50% of the value of the [p]roperty." Crucially for Minkina, her calculations suggested that using an actuarial approach would have allowed her to avoid all but $4,759 of the judicial lien, and a 50 percent approach would have allowed her to avoid the lien in its entirety. However, either of these approaches would have constituted a departure from the B.A.P.'s decision in Snyder, in which the B.A.P. opted to value a Massachusetts "[d]ebtor's interest in [a] tenancy by the entirety property for purposes of the section 522(f) formula . . . at 100 percent" of the property's value. 249 B.R. at 46. By contrast, RPS urged the court to follow the Snyder approach -- an unsurprising development, given that such an approach would have prevented Minkina from avoiding the lien under the § 522(f) formula.

Given the centrality of Snyder to the avoidance motion, both parties asked the bankruptcy court to first indicate whether it would follow that case's valuation method before reaching a final decision on avoidance. The court indicated that it would not follow the B.A.P.'s Snyder decision, reasoning that "[a] property interest can be compared to a bundle of sticks . . . ; it is undisputed that one spouse in a tenancy by the entire[t]y does not hold all the sticks and that the other spouse holds many sticks that limit the value of the debtor spouse's interest . . . ."

- 4 -

Accordingly, the court noted that it was "inclined to hold that, in the absence of evidence to the contrary, the interest of each spouse in a tenancy by the entirety is equal to 50 percent of the property's fair market value."

Two crucial events then transpired between the bankruptcy court's issuance of its preliminary and final decisions on Minkina's motion to avoid the RPS judicial lien. First, the parties stipulated to the following with regards to the valuation of Minkina's share "to minimize the expense to the parties of the needless exercise of an evidentiary hearing":

> 1. For purposes of the Motion to Avoid Judicial Lien only, the value of the Property owned by the Debtor with her husband as tenants by the entirety, . . . is $1,050,000.
>
> 2. That, for purposes of the Motion to Avoid Judicial Lien only, the market value of the Debtor's interest in the Property subject to her non-debtor spouse's right of survivorship does not exceed $525,000.
>
> 3. Nothing in this Stipulation shall be deemed to be an admission by RPS that, as a matter of law, the Debtor's interest in the Property is anything less than 100% of the Property's value.

Second, RPS "raised a new ground of opposition [to the motion to avoid]: that if the value of the [p]roperty is to be allocated as in a tenancy in common, then the homestead exemption and the other liens . . . must also be allocated" between Minkina and her husband. In re Minkina, 631 B.R. at 547.

- 5 -

The bankruptcy court ultimately granted Minkina's motion to avoid. It once again rejected the Snyder approach, reiterating that -- contrary to RPS's assertions and the B.A.P.'s reasoning -- Massachusetts law, and particularly the Supreme Judicial Court's ("SJC") decision in Coraccio v. Lowell Five Cents Sav. Bank, 415 Mass. 145 (1993), did not compel the conclusion that a spouse's share in a tenancy by the entirety had to equal the full value of the property. In re Minkina, 631 B.R. at 551-55. The court consequently accepted the parties' stipulation that Minkina's share in the property was worth no more than $525,000, and separately rejected RPS's arguments that the other liens and homestead exemption needed to be allocated between the spouses. Id. at 548, 556, 558-59. Given these conclusions, Minkina could avoid the judicial lien in its entirety under the § 522(f) formula. Id. at 559.

We permitted a direct appeal of the bankruptcy court's interlocutory order under 28 U.S.C. § 158(d)(2), and this appeal followed.

## II.

"When considering an appeal from a bankruptcy court, under most circumstances, '[w]e review the bankruptcy court's legal conclusions de novo, its findings of fact for clear error, and its discretionary rulings for abuse of discretion.'" United

- 6 -

Sur. & Indem. Co. v. López-Muñoz (In re López-Muñoz), 983 F.3d 69, 71 (1st Cir. 2020) (alteration in original) (quoting United Sur. & Indem. Co. v. López-Muñoz (In re López-Muñoz), 866 F.3d 487, 496-97 (1st Cir. 2017)).  These principles apply to direct appeals from a bankruptcy court.  Cf. Coughlin v. Lac du Flambeau Band of Lake Superior Chippewa Indians (In re Coughlin), 33 F.4th 600, 604 (1st Cir. 2022), aff'd, 143 S. Ct. 1689 (2023) (applying de novo review to a direct appeal under 28 U.S.C. § 158(d)).  As RPS has solely raised claims of legal error on appeal, we review the bankruptcy court's prior treatment of these claims de novo.

## III.

### A.

Before turning to the merits, we note that the parties remain bound on appeal by the stipulation that they entered.  See Morales Feliciano v. Rullan, 303 F.3d 1, 8 (1st Cir. 2002) ("A party's stipulations are binding on that party and may not be contradicted by him at trial or on appeal.").  As excerpted above, the parties agreed in the stipulation "[t]hat, for purposes of the Motion to Avoid Judicial Lien only, the market value of the Debtor's interest in the Property subject to her non-debtor spouse's right of survivorship does not exceed $525,000," but that "[n]othing in this Stipulation shall be deemed to be an admission by RPS that, as a matter of law, the [d]ebtor's interest in the [p]roperty is anything less than 100% of the [p]roperty's value."

- 7 -

"Stipulations are interpreted according to general contract law principles," Lestage v. Coloplast Corp., 982 F.3d 37, 48 n.5 (1st Cir. 2020), and we are mindful of the maxims that "contracts containing unambiguous language must be construed according to their plain and natural meaning" and that "[a]ccepted canons of construction forbid the balkanization of contracts for interpretive purposes," Smart v. Gillette Co. Long-Term Disability Plan, 70 F.3d 173, 178-79 (1st Cir. 1995). We interpret the combination of the two clauses highlighted above to mean that the valuation of no more than $525,000 controls unless we conclude that Minkina's interest in the property must equal the full market value of the property "as a matter of law," since that is the claim that RPS explicitly preserved through the stipulation. As detailed below, we do not so conclude.

**B.**

Section 522(a)(2) of the Bankruptcy Code defines "value" for the purposes of § 522 -- and, therefore, for the judicial lien avoidance formula of § 522(f)(2)(A) -- as the "fair market value as of the date of the filing of the petition." While the Bankruptcy Code does not define the term "fair market value," the phrase generally refers to "[t]he amount at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts." Fair Market Value, Black's Law

- 8 -

Dictionary (6th ed. 1990); see Bankruptcy Reform Act of 1994, Pub. L. 103-394, § 303, 108 Stat. 4106, 4132 (enacting the § 522(f) formula); cf. Bostock v. Clayton Cnty., 140 S. Ct. 1731, 1738 (2020) ("[We] normally interpret[] a statute in accord with the ordinary public meaning of its terms at the time of its enactment."); Schwab v. Reilly, 560 U.S. 770, 783 (2010) ("[W]e may look to dictionaries . . . to determine the meaning of words the [Bankruptcy] Code does not define[.]"). At the same time, "[p]roperty interests are created and defined by state law [for purposes of the Bankruptcy Code] [u]nless some federal interest requires a different result." Butner v. United States, 440 U.S. 48, 55 (1979), superseded in part by statute, Bankruptcy Reform Act of 1994. This appeal trains on the interplay between those two principles. RPS claims that the fact that a Massachusetts tenancy by the entirety comprises a "unitary title" compels the conclusion that the value of Minkina's share in the property must equal the full value of the property. Minkina counters that such a conclusion both rests on a misinterpretation of Massachusetts law and raises preemption concerns, given the Code's aforementioned definition in § 522 of value as "fair market value."

Minkina has the better of the argument. The fact that a Massachusetts tenancy by the entirety constitutes a "unitary title" plainly does not compel the conclusion that an individual spouse's interest in the tenancy must be valued at the fair market

- 9 -

value of the entire property in question.  Moreover, the <u>Snyder</u> approach impermissibly departed from Congress's explicit instructions to value the debtor's interest in the property absent any liens as the fair market value thereof for the purposes of the § 522(f) formula.  We address these two points in turn.

**1.**

We begin with RPS's Massachusetts law claim, irrespective of any preemption concerns the claim may raise.  Much like the B.A.P. in <u>Snyder</u>, RPS claims that the SJC's description of a Massachusetts tenancy by the entirety in <u>Coraccio</u> as a "unitary title . . . [that, in the wake of statutory amendments,] guarantees each spouse an equal right to a whole," and -- therefore -- a tenancy for which "it does not follow that each [spouse] has an equal one-half interest in the property," supports their preferred approach to valuation.  415 Mass. at 151; <u>see also</u> <u>Snyder</u>, 249 B.R. at 44 (interpreting the "unitary title" language to mean that a tenancy by the entirety represents "a title in which the interests of both husband and wife extend to the whole of the property, not merely to some fractional interest that the other does not also hold").[2]

---

[2] To be sure, our court did affirm <u>Snyder</u> in an unpublished decision.  <u>See</u> <u>Snyder</u> v. <u>Rockland Tr. Co.</u> (<u>In re Snyder</u>), 2 F. App'x 46 (1st Cir. 2001).  However, that opinion lacks precedential value, <u>see</u> 1st Cir. R. 36.0(c), and -- as RPS acknowledges -- our court did not address the valuation issue on the merits there because we found that Snyder waived his valuation-based arguments.

This argument stretches selected quotes from Coraccio too far. As the bankruptcy court noted, Coraccio simply did not concern valuation. See In re Minkina, 631 B.R. at 553-54. In that case, the SJC sought to address whether the Massachusetts legislature's statutory equalization of rights between men and women in tenancies by the entirety in 1979 "prevents one spouse, acting alone, from encumbering his or her interest in property held by the entirety." Coraccio, 415 Mass. at 148; see Mass. Gen. Laws ch. 209, § 1 ("A husband and wife shall be equally entitled to the rents, products, income or profits and to the control, management and possession of property held by them as tenants by the entirety."). The excerpted passages served to reaffirm that the statutory modification of the common-law tenancy "did not . . . alter the characteristics of the estate itself," including the features discussed above. Coraccio, 415 Mass. at 151. Indeed, the SJC did not so much as include the word "value" in its opinion, and perhaps for good reason. As the bankruptcy court noted, valuation and a delineation of rights are different enquiries. See In re Minkina, 631 B.R. at 554-55. Coraccio's

RPS also points to our decision in Garran v. SMS Financial V, LLC (In re Garran), 338 F.3d 1, 5 (1st Cir. 2003) (quoting Snyder v. Rockland Tr. Co. (In re Snyder), 279 B.R. 1, 4 (1st Cir. B.A.P. 2002)), for the proposition that our court has "cited Snyder . . . as authority for purposes of a motion to avoid [a] lien," but that case cited to a subsequent B.A.P. decision that did not concern the specific valuation question at issue in this appeal.

- 11 -

"unitary title" language describes the extent of the interest, not the value thereof, and therefore imposes no requirement to value Minkina's interest in the property as the full value of the property. Valuing a spouse's undivided interest in the property at up to 50 percent of its fair market value, as the parties did here through the stipulation, therefore does not run afoul of Coraccio's explanation that a tenant by the entirety possesses "an equal right to the whole" as part of a "unitary title," as opposed to an "equal one-half interest." 415 Mass. at 151. Given that this Coraccio-based argument is RPS's sole argument on appeal predicated on Massachusetts law, we conclude that the firm's state law argument is unavailing.

## 2.

We thus turn to analyzing the propriety of the bankruptcy court's valuation method under federal law. RPS in essence claims that "seek[ing] to apply the concept of value as 'the price at which the property would change hands between a willing buyer and a willing seller'" -- almost verbatim the above-referenced definition of fair market value -- is improper because such an approach rests on a "legal fiction [that] is [ostensibly] impossible" under Massachusetts law.[3] The challenge with this argument is that, rather than federal law preempting Massachusetts

---

[3] RPS also notes that that there is "no preemptive federal law to consider" in this case.

- 12 -

law, RPS's position is tantamount to an argument that Massachusetts law reverse-preempts the definition of "value" in § 522(a). Of course, given our above conclusion that RPS's Coraccio-based argument misapplies Massachusetts law, there is no genuine preemption issue here -- after all, there is no Massachusetts law to preempt.[4] But teasing out the logic of RPS's argument also helps illustrate how the Snyder approach in effect ignored Congress's fair market value directive.

Reaching such a conclusion requires an explanation of Massachusetts tenancies by the entirety and the valuation problems they raise in the context of § 522(f). Indeed -- as both parties acknowledge, and as previously noted -- even though the valuation question is ultimately controlled by the plain text of § 522, "[p]roperty interests are [in general] created and defined by state law." Butner, 440 U.S. at 55 (emphasis added). Under Massachusetts law, a spouse's interest in a tenancy by the entirety is both highly encumbered by the other spouse's interest and -- in part because of these encumbrances -- also necessarily distinct

_____

[4] We also have no occasion to reach the preemption issue Minkina raises by the same logic. Cf. Vaquería Tres Monjitas, Inc. v. Pagan, 748 F.3d 21, 26 (1st Cir. 2014) ("[F]ederal courts are not to reach constitutional issues where alternative grounds for resolution are available." (quoting Am. C.L. Union v. U.S. Conf. of Cath. Bishops, 705 F.3d 44, 52 (1st Cir. 2013))); PDK Lab'ys Inc. v. U.S. Drug Enf't Admin., 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring) ("[T]he cardinal principle of judicial restraint -- if it is not necessary to decide more, it is necessary not to decide more -- counsels us to go no further.").

from the tenancy as a whole. As the bankruptcy court noted, a spouse holding property in a Massachusetts tenancy by the entirety "may [not] compromise or alter the tenancy unilaterally." In re Minkina, 631 B.R. at 552. "For as long as the marriage continues, the estate cannot be severed, terminated, or partitioned by either spouse without the assent of the other." Id.; see also Mass. Gen. Laws ch. 241, § 1 (exempting tenants by the entirety from the entitlement to partition). However, despite the unitary title, the SJC in Coraccio held that "either spouse [in a tenancy by the entirety] may convey or encumber his or her interest in property held as tenants by the entirety." 415 Mass. at 152.[5] Even so, an encumbered or conveyed interest is still subject to the limitations outlined above. Perhaps most importantly, a spouse's interest is also limited by the other spouse's "indestructible right of survivorship"; or the notion that, once one spouse is deceased, the other "becomes seised as sole owner of the whole estate

---

[5] On a related note, RPS claims that "Coraccio concludes only that one spouse may encumber his or her interest in property held in a tenancy by the entirety, not convey it," and that the "language from Coraccio seeming to allow a conveyance by one spouse of that spouse's interest . . . referenc[es] New York state law -- not that of Massachusetts." That is patently incorrect. The "may convey" passage was written without reference to New York law, and the SJC also explicitly wrote that "the view expressed by the New York Court of Appeals in V.R.W., Inc. v. Klein, 68 N.Y.2d 560, 565 (1986), [i.e., that 'each tenant may sell, mortgage or otherwise encumber his or her rights in the property'] sets forth the appropriate rule." Coraccio, 415 Mass. at 152 (quoting V.R.W., Inc., 68 N.Y.2d at 565).

- 14 -

regardless of anything the other may have done" -- including, crucially for the purposes of this case, any encumbrances on the deceased spouse's interest. Coraccio, 415 Mass. at 149, 151 (second quoting Licker v. Gluskin, 265 Mass. 403, 404 (1929), superseded by statute, 1979 Mass. Acts 768, as recognized in Coraccio, 415 Mass. at 150). As Judge Kenner put it in her seminal opinion on Massachusetts tenancies by the entirety:

> By virtue of the right of survivorship, the interest of the first spouse to die is no more than a life estate. That spouse's interest terminates upon his or her death, and, with it, any interest acquired (by assignment or encumbrance, whether voluntary or not) from that spouse alone.

In re Snyder, 231 B.R. 437, 442 (Bankr. D. Mass. 1999), aff'd as modified, 249 B.R. at 47.[6] In turn, from the point of view of a conveyee of the spouse's interest, the interest he or she acquires through the conveyance "would, among other things, be wholly defeasible upon the death of the conveying spouse and survivorship

---

[6] We note that the right of survivorship does not appear to be a lien under the Bankruptcy Code for purposes of the § 522(f) formula. See 11 U.S.C. § 522(f)(2)(A) (incorporating into the formula "the value that the debtor's interest in the property would have in the absence of any liens"). 11 U.S.C. § 101(37) defines a "lien" as a "charge against or interest in property to secure payment of a debt or performance of an obligation." Nothing in this definition suggests that a "right of survivorship," which does not pertain to "secur[ing] payment of a debt or performance of an obligation," can plausibly be construed as a lien. And no argument has been made to us that a non-debtor spouse's right of survivorship should be so construed for purposes of the § 522 formula.

of the other."[7]  Id.  In sum, "Massachusetts law makes clear that the unitary title does not give each spouse the same rights in the property as he or she would have as sole owner."  Id. at 443. "Each spouse's rights in the property are drastically circumscribed by those of the other."  Id.

Those encumbrances on a spouse's interest in a tenancy by the entirety both serve to differentiate it from the tenancy as a whole and also pose the valuation problem in Minkina's case and others like it.  RPS's argument illustrates the first point.  As noted above, the firm claims that attempting to apply fair market value to a debtor's interest in property held in a tenancy by the entirety is a "legal fiction [that] is impossible, [because] it necessarily presumes that the seller [i.e., the debtor spouse] has the capacity to make a sale, . . . [when] no sale is possible without destroying the tenancy."  That argument misses the point -- the value in question here is not of the property, nor of the tenancy as a whole, but rather of the debtor's interest in the

_____

[7]  Massachusetts law also mandates that "[t]he interest of a debtor spouse in property held as tenants by the entirety shall not be subject to seizure or execution by a creditor of such debtor spouse so long as such property is the principal residence of the nondebtor spouse," Mass. Gen. Laws ch. 209, § 1, but we note (without weighing in ourselves) that lower courts in our circuit have concluded that this prohibition is preempted by the trustee sale provision of 11 U.S.C. § 363(h).  See, e.g., Whitman v. Lassman, No. 06-11780, 2007 WL 2259108, at *1 (D. Mass. Aug. 1, 2007); Desmond v. Green (In re Green), No. 13-10204, 2018 WL 4944988, at *4-5 (Bankr. D. Mass. Oct. 11, 2018).

- 16 -

tenancy, which is subject to the suite of encumbrances described above that do not apply to the tenancy as a whole. Just as importantly, the argument also ignores the fact that a spouse's interest should have an identifiable present value, given that Coraccio allows a tenant by the entirety to convey or encumber his share.

As to the second point, the discrepancy between a sole owner and a spouse's interest as a tenant by the entirety necessarily affects the valuation question, as well. A market participant attempting to value a debtor's interest in a tenancy by the entirety is simply analyzing a different (though subsidiary, and much more limited) bundle of sticks than a property held in fee simple absolute or one being conveyed with the assent of both tenants by the entirety. See United States v. Craft, 535 U.S. 274, 278 (2002) ("A common idiom describes property as a 'bundle of sticks' -- a collection of individual rights which, in certain combinations, constitute property."). As Judge Kenner wrote, anyone attempting to appraise a debtor's interest in a tenancy by the entirety has to grapple with the "uncertainty about the [tenancy's] future," In re Snyder, 231 B.R. at 445, given that

> a debtor spouse's interest will eventually come to one of three possible ends: (1) the debtor spouse will survive the nondebtor spouse and thereupon becomes seised of the whole estate, subject to seizure and execution by his creditors; (2) the debtor spouse will predecease the nondebtor spouse, resulting in

- 17 -

> termination of the decedent's interest and of liens attaching exclusively thereto; or (3) the tenancy will be terminated (by voluntary conveyance, foreclosure on a jointly given mortgage, or divorce) before the death of either spouse, resulting in termination of the unitary title, division or apportionment of the net proceeds among the spouses (or at least the possibility thereof), and vulnerability of the debtor spouse's interest in the proceeds to seizure or execution by creditors.

Id. at 443.

Indeed, it is that quandary that gave rise to the Snyder approach. However, as explained below, the logic of the B.A.P.'s solution ran afoul of the plain text of the Code.

Understanding the development of the B.A.P.'s approach requires detailing Snyder's procedural history. There, Judge Kenner originally entered a provisional order that valued the debtor's interest as the full value of the property "based on the express assumption that, upon termination of the tenancy by the entirety, the [d]ebtor's interest will extend to the whole of the property," but preserved the option to "reconsider[] [the order] on the basis of actual knowledge about how the tenancy is terminated." Id. at 445. The B.A.P. nevertheless proceeded to reject the provisional aspect of the order, reasoning that "[o]ne of the principal tenets of bankruptcy is finality in order to insure . . . a fresh start," but upheld the full-value aspect of the order. Snyder, 249 B.R. at 45-46. The panel concluded that

- 18 -

the approach was warranted because a 50 percent approach would ostensibly run afoul of Coraccio (an incorrect assumption, as discussed above) and an actuarial approach would run afoul of the panel's determination that "a hearing on a motion to avoid a lien pursuant to section 522(f) . . . should be a summary proceeding susceptible to a quick and binding resolution," as evidenced by legislative history related to the formula and the Federal Rules of Bankruptcy Procedure's treatment of these proceedings. Id. at 46.

Whatever the logic and advantages of the B.A.P.'s approach to such a complex question might be, we conclude that (in addition to our disagreement with its reading of Coraccio) it departed from the language of the Code itself. Indeed, two words were conspicuously absent from the B.A.P.'s ruling: fair market. Suffice it to say that legislative history, the Federal Rules of Bankruptcy's treatment of a provision, considerations of finality, "basic" or "overarching principles" of bankruptcy (as RPS argues), or even the fact that the Snyder approach "employ[ed] a bright line that is easy to follow and apply," In re O'Connell, 334 B.R. 312, 315 n.6 (Bankr. D. Mass. 2005), cannot trump our obligation to follow the plain text of a statute. See Puerto Rico v. Franklin Cal. Tax-Free Tr., 579 U.S. 115, 125 (2016) ("The plain text of the Bankruptcy Code begins and ends our analysis."). Consequently, bankruptcy courts applying the § 522(f) formula should instead

calculate "the value that the debtor's interest in the property would have in the absence of any liens" as the "fair market value [of the foregoing] as of the date of the filing of the petition," just as Congress required -- no more and no less.

**IV.**

To be sure, we are acutely aware of the fact that applying such a definition does not always prove an easy task (as illustrated above), and that rejecting the legal bases of the Snyder decision -- a decision which, as the bankruptcy court noted, has been followed numerous times both within and outside this circuit, see In re Minkina, 631 B.R. at 550 (collecting cases) -- could create some uncertainty.  However, on that note, there are also reasons to be skeptical of the proposition that the fair market value of any debtor's share in a tenancy by the entirety equals the full value of the property "as of the date of the filing of the petition," given the encumbrances discussed above.  11 U.S.C. § 522(a)(2); see In re Naples, 521 B.R. 715, 717 (Bankr. W.D.N.Y. 2014) (postulating that to conclude that a spouse being "seized of the whole [tenancy] means valuing the [spouse's] interest of all of the equity value [of the property] . . . [ignores] the freedom that one entireties tenant has to alienate his or her own undivided interest" (citing In re Levinson, 372 B.R. 582 (Bankr. E.D.N.Y. 2007))); In re Bradigan, 501 B.R. 151, 154 (Bankr. W.D.N.Y. 2013) ("Although fully seized

- 20 -

of the whole, the separate interest of one spouse is subject to rights of the co-owner. By reason of this limitation, we must value the debtor's interest at something less that the interest of a single owner in fee simple absolute."); Town of N. Reading v. Welch, 711 N.E.2d 603, 605 (Mass. App. Ct. 1999) (noting, in the context of a tax foreclosure on a property held in a tenancy by the entirety, that "[t]he actuarial value of [the spouse's] survivorship interest . . . is likely to be less than the fair market value of the locus unencumbered").

Bankruptcy courts are in the best position to divine fair market value in any individual case, and we go no further than to reiterate the need to focus on the text of the Code. The task in this appeal is simple enough at this juncture: the stipulation stands, because neither state nor federal law requires a valuation of Minkina's interest as the full value of her home, and the bankruptcy court thus correctly accepted the valuation of

no more than $525,000.[8]  The bankruptcy court's order is therefore

**affirmed**.[9]

---

[8]  RPS also urges us to cap Minkina's homestead exemption for the purposes of the § 522(f) formula at 50 percent if we affirm the bankruptcy court's order (as we have done).  The firm claims that, because Massachusetts law provides that a homestead exemption "shall remain whole and unallocated" in the case of a tenancy by the entirety or a joint tenancy, but the bankruptcy court's valuation approach ostensibly constitutes "treating each individual as a tenant in common," we should treat the homestead exemption in line with provisions for the latter, as well.  Mass. Gen. Laws ch. 188, § 1.  However, as explained above, abiding by the no more than $525,000 valuation does not negate the nature of Minkina and her husband's tenancy by the entirety.  RPS's argument is therefore unavailing.

[9]  Our holding in this case is limited to Massachusetts law and -- as illustrated above -- is intertwined with the SJC's holding in Coraccio that a tenant by the entirety may convey her share in the tenancy.  We express no opinion on whether the outcome would be different in a jurisdiction where such a conveyance would not be allowed.